1    **KERSHAW, CUTTER & RATINOFF, LLP**
C. BROOKS CUTTER, SBN 121407
2    E-mail: bcutter@kcrlegal.com
JOHN R. PARKER, JR., SBN 257761
3    E-mail: jparker@kcrlegal.com
401 Watt Avenue
4    Sacramento, California 95864
Telephone: (916) 448-9800
5    Facsimile: (916) 669-4499

**FILED**

JUN 1 3 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

6

7

8

9        **IN THE UNITED STATES DISTRICT COURT**

       **EASTERN DISTRICT OF CALIFORNIA**

10

11

12    [UNDER SEAL]                Case No. **2 - 1 1 ᖁ - 1 5 8 8 MCE KJN**

13

14             Relator,       **COMPLAINT FOR DAMAGES UNDER
THE FEDERAL FALSE CLAIMS ACT**
15                              **AND VARIOUS STATE FALSE CLAIMS
ACTS AND DEMAND FOR JURY**
16      v.                                **TRIAL**

17

18    [UNDER SEAL],

19

20            Defendant.     **TO BE FILED IN CAMERA
AND UNDER SEAL PURSUANT TO**
21                                **31 U.S.C. § 3730**

22

23                                **DO NOT ENTER INTO PACER**

24                                **DO NOT PLACE IN PRESS BOX**

25

26

27

28

---

| | |
|---|---|
| 1 | UNITED STATES OF AMERICA |
| 2 | ex rel. Charles Phillips, M.D., Relator, |
| | STATE OF ARKANSAS ex rel. Charles |
| 3 | Phillips, M.D., Relator, |
| 4 | STATE OF CALIFORNIA ex rel. Charles |
| 5 | Phillips, M.D., Relator, |
| 6 | STATE OF DELAWARE ex rel. Charles |
| 7 | Phillips, M.D., Relator, |
| 8 | DISTRICT OF COLUMBIA ex rel. |
| 9 | Charles Phillips, M.D., Relator, |

§ Case No.:

§ **COMPLAINT FOR DAMAGES UNDER**
§ **THE FEDERAL FALSE CLAIMS ACT**
§ **AND VARIOUS STATE FALSE**
§ **CLAIMS ACTS AND DEMAND FOR**
§ **JURY TRIAL**

§ **TO BE FILED IN CAMERA**
§ **AND UNDER SEAL PURSUANT TO 31**
§ **U.S.C. § 3730**

§ **DO NOT ENTER INTO PACER**

§ **DO NOT PLACE IN PRESS BOX**

Row listing (lines 1–28):

1 UNITED STATES OF AMERICA §
2 ex rel. Charles Phillips, M.D., Relator, §
  § Case No.:
3 STATE OF ARKANSAS ex rel. Charles §
  Phillips, M.D., Relator, § **COMPLAINT FOR DAMAGES UNDER**
4 § **THE FEDERAL FALSE CLAIMS ACT**
  STATE OF CALIFORNIA ex rel. Charles § **AND VARIOUS STATE FALSE**
5 Phillips, M.D., Relator, § **CLAIMS ACTS AND DEMAND FOR**
6 § **JURY TRIAL**
  STATE OF DELAWARE ex rel. Charles §
7 Phillips, M.D., Relator, §
  §
8 DISTRICT OF COLUMBIA ex rel. §
  Charles Phillips, M.D., Relator, §
9 § **TO BE FILED IN CAMERA**
10 STATE OF FLORIDA ex rel. Charles § **AND UNDER SEAL PURSUANT TO 31**
  Phillips, M.D., Relator, § **U.S.C. § 3730**
11 §
  STATE OF GEORGIA ex rel. Charles § **DO NOT ENTER INTO PACER**
12 Phillips, M.D., Relator, §
  § **DO NOT PLACE IN PRESS BOX**
13 STATE OF HAWAII ex rel. Charles §
14 Phillips, M.D., Relator, §
  §
15 STATE OF ILLINOIS ex rel. Charles §
16 Phillips, M.D., Relator, §
  §
17 STATE OF INDIANA ex rel. Charles §
  Phillips, M.D., Relator, §
18 §
  STATE OF LOUISIANA ex rel. Charles §
19 Phillips, M.D., Relator, §
  §
20 STATE OF MASSACHUSETTS ex rel. §
21 Charles Phillips, M.D., Relator, §
  §
22 STATE OF MICHIGAN ex rel. Charles §
  Phillips, M.D., Relator, §
23 §
  STATE OF MONTANA ex rel. Charles §
24 Phillips, M.D., Relator, §
  §
25 STATE OF NEVADA ex rel. Charles §
26 Phillips, M.D., Relator, §
  §
27 STATE OF NEW HAMPSHIRE ex rel. §
  Charles Phillips, M.D., Relator, §
28 §
  §

| | |
|---|---|
| STATE OF NEW JERSEY ex rel. Charles Phillips, M.D., Relator, | § § § |
| STATE OF NEW MEXICO ex rel. Charles Phillips, M.D., Relator, | § § § |
| STATE OF NEW YORK ex rel. Charles Phillips, M.D., Relator, | § § § |
| STATE OF OKLAHOMA ex rel. Charles Phillips, M.D., Relator, | § § § |
| STATE OF RHODE ISLAND ex rel. Charles Phillips, M.D., Relator, | § § § |
| STATE OF TENNESSEE ex rel. Charles Phillips, M.D., Relator, | § § § |
| STATE OF TEXAS ex rel. Charles Phillips, M.D., Relator, | § § § |
| STATE OF VIRGINIA ex rel. Charles Phillips, M.D., Relator, | § § § |
| STATE OF WISCONSIN ex rel. Charles Phillips, M.D., Relator, | § § § § |
| Plaintiffs, | § § § |
| vs. | § § |
| QUANTUM HEALTHCARE MEDICAL ASSOCIATES, INC., TEAM PHYSICIANS OF CALIFORNIA MEDICAL GROUP, INC., TEAM HEALTH, INC., TEAM HEALTH HOLDINGS, LLC, T-SYSTEM, INC., MARINA MEDICAL BILLING SERVICE, INC., VALLEY EMERGENCY PHYSICIANS MEDICAL GROUP, INC., and SIERRA RURAL PHYSICIANS, INC., | § § § § § § § § § § § |
| Defendants. | § |

Complaint for Damages Under the Federal False Claims Act

# INTRODUCTION

1. For more than ten years, the above-named Defendants have created, employed, operated and contracted with fraudulent billing systems designed to systematically overcharge federal and state health care systems, including Medicare and Medicaid.

2. The fraudulent overcharges were achieved primarily by "upcoding" medical patient interviews and examinations, e.g., regularly charging for more complicated and more expensive activities or procedures than those actually performed by physicians and other health care providers in emergency rooms and urgent care facilities.

3. By creating false and misleading medical records and correspondingly upcoded billing records, and by actively falsifying medical and billing records, Defendants intended to, and did, misstate amounts due to be paid by federal and state health care systems.

4. This action is brought under the Federal False Claims Act, 31 U.S.C. §3729, et seq. and the various state false claims statutes.

5. This complaint is based upon non-public information Relator Charles Phillips, M.D. ("Relator") obtained while contracted by or working with each of the Defendants, his personal observation of the acts and conduct of the Defendants as a provider and/or consultant, and by non-public information he, or his attorneys, obtained during the period of investigation of his False Claims Act claims.

6. Except where otherwise noted, Defendants have committed the fraudulent documentation and/or billing practices described in this complaint, from at least 1999 through at least 2010. Relator believes the fraudulent billing practices have continued beyond 2010.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 31 U.S.C. § 3732(a) and 31 U.S.C. § 3732(b), because this case is brought under 31 U.S.C. § 3730.

8. Venue is proper in this Court under 31 U.S.C. § 3732(a), because each Defendant transacts business in the Eastern District of California, and all the Defendants committed acts proscribed by 31 U.S.C. § 3729 in the Eastern District of California.

9. This Court has supplemental jurisdiction over the state law claims contained in this

action pursuant to 28 U.S.C. § 1367(a), as such claims form part of the same case or controversy as the federal claims.

**PARTIES**

10.     Relator Charles Phillips, M.D., brings this action in the name of the United States and several States, to recover penalties and damages arising from fraudulent and unlawful conduct by Defendants from at least 1999 to the present day. Relator is a citizen of California and resides in this District.

11.     From 1999 to 2008, Relator has worked at various times as a contractor for Defendants Quantum Health Care Associates, Inc., Team Physicians of California Medical Group, Inc., Team Health, Inc., Team Health Holdings, LLC, Valley Emergency Physicians, Inc., and Sierra Rural Physicians, Inc. During that same period, Relator Phillips was familiar with the fraudulent billing practices and processes of Defendants T-System, Inc., and Marina Medical Billing Service, Inc.

12.     During the time period described in this Complaint, Relator has worked as a physician responsible for interviewing patients, investigating their ailments, and treating them. Through his work, Relator acquired direct personal knowledge of and non-public information about the Defendants' fraudulent billing of federal and state health care systems.

13.     Defendant Quantum Health Medical Associates, Inc. ("Quantum"), is a California Corporation whose principal place of business is listed as 265 Brookview Center Way, Suite 400, Knoxville, Tennessee 37919, according to the California Secretary of State. Quantum is a physician practice staffing and management company for which, on information and belief, Relator worked in 2004 and 2005. Relator's experience was in urgent care at Quantum and Quantum's practices in contracting with the government. Relator observed Quantum's use of fraudulent T-System billing practices at Quantum.

14.     Defendant Team Physicians of California Medical Group, Inc., ("TPCMG") is a California Corporation whose principal place of business is listed as 265 Brookview Center Way, Suite 400, Knoxville, Tennessee 37919, according to the California Secretary of State. TPCMG is a physician practice staffing and management company for which, on information and belief,

Complaint for Damages Under the Federal False Claims Act

1  Relator worked in 2004 and 2005. Relator's experience was in urgent care at TPCMG and

2  TPCMG's practices in contracting with the government. Relator observed TPCMG's use of

3  fraudulent T-System billing practices at TPCMG.

4      15.    Defendant Team Health, Inc., is a Tennessee corporation whose principal place of

5  business is listed as 265 Brookview Center Way, Suite 400, Knoxville, Tennessee 37919,

6  according to the Tennessee Secretary of State. Defendant Team Health Holdings, LLC, is a

7  Tennessee limited liability company whose principal place of business is listed as 265 Brookview

8  Center Way, Suite 400, Knoxville, Tennessee 37919, according to the Tennessee Secretary of

9  State. Team Health, Inc., and Team Health Holdings, LLC, are collectively referred to herein as

10  "Team Health." Team Health is a physician practice staffing and management company that

11  operates all over the United States. Plaintiff is informed and believes and thereon alleges that

12  Quantum and TPCMG are doing business in California as wholly-owned subsidiaries of Team

13  Health. Relator's work in emergency and urgent care at Team Health facilities and Team Health's

14  practices in contracting with the state and federal health care systems. Relator observed Team

15  Health's use of fraudulent T-System billing practices in 2004 and 2005, has been in contact with

16  Team Health's marketing group as recently as 2011, and has observed the same fraudulent

17  practices continue there.

18      16.    Defendant T-System, Inc., is a Texas corporation located at 4020 McEwen Drive,

19  Suite, Dallas, Texas 75244. T-System, Inc., has been providing medical charting templates, as

20  well as billing and collection services, to hospitals and other medical institutions since at least

21  1996.

22      17.    Valley Emergency Physicians Medical Group, Inc., ("Valley") is a California

23  Corporation that is located in Walnut Creek, California. Valley is a physician practice staffing

24  and management company that does business throughout the State of California and for which

25  Relator worked at Corcoran Hospital in California from 2001 through Spring 2007. Valley

26  provides staffing, physician training in "charge capture," billing, collection, and physician

27  management services to its customers. Relator has direct personal knowledge about Valley's

28  pattern and practice of fraudulent upcoding.

Complaint for Damages Under the Federal False Claims Act

18.     Sierra Rural Physicians, Inc., ("SRP") is California Corporation that is located in Mariposa, California.  SRP is a physician practice whose physicians provide emergency services at John Fremont Hospital in Mariposa County, California.  Relator worked for SRP from 2007 through January 2008 – mostly at Corcoran District Hospital and occasionally at the John Fremont Hospital.  Relator has direct personal knowledge about SRP's pattern and practice of fraudulent upcoding in concert with Defendant Marina Medical Billing Services, Inc.

19.     Marina Medical Billing Services, Inc. ("MMS") is a California corporation with its principal place of business in Cerritos, California.  MMS provides billing and collection services to emergency room physician groups, and on information and belief to hospitals and other medical institutions. Relator has direct personal knowledge of Marina Medical's practice of grading individual physicians on revenue production or theoretical loss of charge capture based upon how well those physicians fraudulently upcode their charts and other records.  Specifically, Relator has direct personal knowledge of how MMS has worked in concert with SRP and other Defendants to boost revenue through fraudulent upcoding.

## FACTUAL BACKGROUND

20.     Defendants contract with hospitals to staff emergency rooms with physicians and/or to provide physician billing services.  Defendants Quantum, TPCMG, Team Health, Valley, and SRP as staffing entities, commonly using fraudulent templates, code and generate bills for physicians' emergency room and urgent care services.  These bills submitted to payors, including Medicare, Medicaid and TRICARE and state health care systems, are necessarily inflated because of the practices and procedures Defendants have put in place to "upcode" bills in the ER and urgent care settings.  The inflated claims for payment are then paid directly to Defendants Quantum, TPCMG, Team Health, Valley, and SRP, or other physician groups who bill for their work using fraudulent templates and practices developed by Defendants MMS and T-System. The physicians are typically paid on an hourly basis (with occasional incentives) as independent contractors by the staffing Defendants, usually hourly for emergency room work and per patient for rural hospitalist work.

21.     Defendants Quantum, TPCMG, Team Health, and Valley, and other physician

Complaint for Damages Under the Federal False Claims Act

staffing companies, also contract with hospitals to provide staffing and billing services for hospital-based emergency room physicians. These hospitals copy their emergency room records to Quantum, TPCMG, Team Health, Valley, and MMS, who individually or in concert code and generate the emergency room physician bills. These bills are then submitted to the patient's medical payor, including Medicare, Medicaid, and TRICARE and state health care systems. The payor pays all of these bills directly to the physician groups or hospitals.

22.     T-System is a medical template and billing services company that provides forms and strategies for maximizing revenue as a result of upcoding emergency room and urgent care medical services, which are designed to rearrange and misstate basic information to make it appear complex. T-System originated the scheme of fraudulent conduct alleged in this case by designing a billing system – including charting templates, billing forms, order sets and later computer augmentations – that compromises patient care and physician responsibilities in order to "simplify" billing and enable more efficient upcoding and overbilling. T-System designs charting templates that falsely or inaccurately record interviews, observations, examination procedures, and medical diagnoses performed by physicians and other health care providers. T-System also designed medical billing forms and billing matrices that misuse the Current Procedural Terminology Codes ("CPT Codes") approved by the American Medical Association ("AMA") and the Center for Medicare and Medicaid Services ("CMS"), and these forms and matrices have resulted in systematically higher billing rates. T-System's charting and billing documents are advertised and marketed to emergency departments in health care facilities throughout the country. In addition, T-System provides current training in the form of physician and nurse user manuals, webinars, and seminars in which they train physicians and their staffs on the best ways to use the T-System forms to shortcut required interviews and examinations and bill the government at a higher rate than justified by their brief interactions with patients. The T-System scheme allows for upcode by, for example, shortcutting the time consuming ten-area "Review of Systems" procedure. This step was reduced to a single box check-off to generate higher billing codes. T-System also designed and implemented training to teach physicians and their staffs how to use their forms to shortcut.

Complaint for Damages Under the Federal False Claims Act

1    23.    T-System's clients, including the other Defendants to this action, directly benefit

2    by the upcoding, because their billing to the hospitals reflects the same upcoding as the bills the

3    Defendants generate for the hospitals and submit to the payors.

4    24.    The AMA, in conjunction CMS, among others, has established numeric codes

5    (known as "CPT Codes") to identify a wide variety of medical services and procedures offered by

6    physicians. These CPT Codes, and the criteria for the corresponding medical services and

7    procedures (the "CPT Coding System"), are published annually by the AMA. Medicare and

8    Medicaid, as well as most commercial carriers, require that providers use the CPT Coding System

9    in seeking reimbursement for physician services and procedures.

10    25.    The CPT Coding System contains detailed criteria so that providers know which

11    CPT Codes to select, as well as multiple clinical examples of the types of medical conditions that

12    are encompassed by each specific CPT Code.

13    26.    There are five CPT Codes used for emergency department physician evaluation

14    and management ("E/M") services. The appropriate E/M Code is determined according to

15    detailed criteria documented in the patient's medical record, which reflects the severity of the

16    patient's medical condition and the complexity of the services rendered by the physician. CPT

17    Code 99281 is used for the lowest level of emergency room services, and 99285 is used for the

18    highest level of services.

19    27.    For example, CMS instructs providers that CPT Code 99281 requires three key

20    components: (1) a problem focused history coding system; (2) a problem focused examination;

21    and (3) straightforward medical decision making. Tetanus re-immunization after a cut is

22    provided as a clinical example, of an interaction requiring minimal physician involvement. In

23    contrast, CPT Code 99285 requires: (1) a comprehensive history including a long review of

24    systems for hidden illness at the end of the interview; (2) a comprehensive examination; and (3)

25    medical decision making of high complexity. As an example, CPT Code 99285 includes the

26    emergency department care for a patient exhibiting active, upper gastrointestinal bleeding.

27    Similar criteria and clinical examples are likewise provided for E/M CPT Codes 99282, 99283

28    and 99284.

Complaint for Damages Under the Federal False Claims Act

CMS has repeatedly directed that physicians, <u>and not third parties,</u> select the appropriate CPT E/M Codes that reflect the services provided to their patients. However, many ER groups use distant billing companies, perhaps purposely far from any potentially annoyed patients. These distant, private billers offer to mine the forms provided for maximal billing level. The billing goal is to increase revenue. The bonuses are sometimes shared without the specificity of how they were obtained – frontline physicians (particularly non-partners) being generally outside of the loop.

29. To supplement the CPT Coding System, CMS in conjunction with the AMA among others, developed Documentation Guidelines for Evaluation and Management Services ("HCFA's Documentation Guidelines" or "Guidelines"). These Guidelines have been in effect during all relevant time periods.

30. CMS's Documentation Guidelines are distributed to all Medicaid and Medicare providers, including the Defendants. The Guidelines were intended to supplement the criteria already contained in the CPT Coding System by informing providers of the documentation that would be required to support each of the E/M CPT Codes.

31. The Guidelines direct that documentation of a patient's medical history, physical examination, and the complexity of the physician's medical decision-making are the key components in selecting the level of E/M service. The Guidelines further set forth the number of body or organ systems that must be reviewed and/or examined by the physician in order to qualify as a particular type of history or examination (for example, problem-focused, expanded problem-focused, detailed or comprehensive for CPT E/M Codes 99281, 99282-99283, 99284 or 99285, respectively).

32. CMS has notified all providers, including the Defendants, that the Guidelines would be used by its carriers for audit and review purposes.

### The Medicaid, Medicare and Tri-Care Programs

33. Medicaid is a federally-funded program established to pay for medical care for the indigent. In California, the Medicaid system is administered by the California Department of Healthcare Services ("DHCS"). Under the Medicaid program, called "Medi-Cal," DHCS

1  established reimbursement levels corresponding to each of the CPT Codes. Health care providers

2  submit to DHCS claims for treatment of Medicaid patients, with the appropriate Code or Codes.

3  After verifying that the patient is covered by Medicaid, DHCS then pays the claim according to

4  Medicaid's reimbursement schedule. In 2007, Medicaid typically reimbursed the following

5  amounts for the following CPT Codes in California:

| CPT Code | Medicaid Reimbursement |
|---|---|
| Emergency Care visits: | |
| 99282 | $24.38 |
| 99283 | $44.60 |
| 99284 | $68.35 |
| 99285 | ~$120 |
| Outpatient visits: | |
| 99201 | $24.98 |
| 99202 | $34.30 |
| 99203 | $62.41 |
| 99204 | $75.17 |
| 99205 | $90.23 |
| 99211 | $13.09 |
| 99212 | $19.75 |
| 99213 | $26.18 |
| 99214 | $40.91 |
| 99215 | $62.41 |
| Critical Care: | |
| 99291 | $132.67 |

(source: California - 2007/08 AAP Medicaid Reimbursement Survey).

34.    Medicare is a federal program administered by the Centers for Medicare &

Medicaid Services (CMS), formerly called the Healthcare Financing Administration (HCFA) of

the United States Department of Health and Human Services to pay for medical care for the

elderly and disabled. Under the Medicare program, HCFA established reimbursement levels

corresponding to each of the CPT Codes. Health care providers submit claims for treatment given

to Medicare patients to their local Intermediary. After verifying that the patient is covered by

Medicare, the Intermediary then pays the claim according to Medicare's reimbursement schedule.

In 2007, Medicare typically reimbursed the following amounts for the following CPT Codes in

California:

| CPT Code | Medicare Reimbursement |
|---|---|
| Emergency Care visits: | |
| 99282 | $37.23 - $42.10 |
| 99283 | $60.62 - $69.23 |
| 99284 | $110.37 - $125.04 |
| 99285 | $160 (estimate) |
| Critical Care: | |

-11-

| | |
|---|---|
| 99291 | $260-16 - $317.15 |

(source: California - 2007/08 AAP Medicaid Reimbursement Survey).

In addition to the reimbursement paid by the Intermediary, Medicare generally requires a 20% copayment by the patient, which can be waived based upon the patient's ability to pay.

     35.    Tri-care, formerly CHAMPUS, is a federal health care program administered by the United States Department of Defense under the authority of 10 U.S.C. §§ 1071-1106. Tri-Care provides for care in civilian facilities for members of the Uniformed Services and their dependents. As with Medicare, providers submit claims to designated Tri-Care contractors, which then process the claims based on reimbursement criteria established by Tri-Care.

### Medicaid And Medicare Fraud: Fraudulent Billing For Emergency Room Visits

     36.    One of Defendants' fraudulent billing practices included billing most Medicaid and Medicare patients using the CPT Code for Level 3 service or above, regardless of the actual service provided to the patient. T-System in particular promoted and encouraged billing for most Medicaid and Medicare patients at Level 3 or above through falsification of medical documents.

     37.    As the first step in this practice, contrary to CMA's direction, physicians in these billing schemes did not determine for themselves the coded level of service for each patient they treated. Rather than allow the physicians to determine the level of service, the ER groups generally sent copies of the patient's medical records copies to distant, internal or contracting billers for aggressive conversion to high-yielding bills. Defendants required the physicians to use the T-System emergency medical evaluation forms for upcoded billing purposes. For example, within the urgent care arm of the Team Health organization, Relator saw his own charges were inflated by Team Health.

     38.    The general pattern, however, was to have the charts copied and sent by these medical staffing groups to billing groups like MMS to extract maximum revenue. The outcome of the fraud is often a minimum Level 3 service or above for nearly all Medicaid and Medicare patients, regardless of the actual services documented on the patient's chart. This practice of coding nearly all Medicaid and Medicare emergency room visits as a Level 3 service or above is evidenced by examplar medical charts obtained by Relator.

     39.    For example, in a case from October 30, 2003, Team Health charged a Medicare patient with a routine urinary tract infection $140 for a Level 3 visit (CPT code 99213) and a urinalysis, despite the fact that the patient did not qualify for a Level 3 charge. Team Health

accomplished the upcode by giving her two diagnoses which are basically the same problem – urinary tract infection and recurrent pyuria. In addition, the face-to-face time required with a patient to charge for the Level 3 visit would not have been in compliance with Medicare regulations in order to run a simple urinalysis.

40.     For example, in a case from December 12, 2004, Team Health charged a Medicare patient over $120 for a Level 3 visit (CPT code 99213), despite the fact that she simply presented with a red eye and high blood pressure, and nothing was done during the visit about the blood pressure. The visit did not qualify as an urgent visit, but Team Health upcoded the bill to reflect a Level 3 charge, just as they increased the bill to Level 3 or above on most patient bills.

41.     For example, Team Health changed Relator' bill in one February 28, 2005 case involving bronchitis/sinusitis from a Level 2 charge (CPT code 99202) to a Level 3 charge (CPT code 99203), by crossing through Relator' circle of 99202 with $122 fee and instead circling the 99203 and writing in a $177 fee. Relator felt that the progression from sinusitis to bronchitis was just one diagnosis, but the Team Health coders treated it as two separate diagnoses. Team Health again changed Relator' bill when the patient from February 28th returned on April 11, 2005 with the case of sinusitis/pharyngitis – the coders upcoded the bill from a Level 2 charge (CPT code 99212) to a Level 3 charge (CPT code 99213), by crossing through Relator' circle of 99212 with $103 fee and instead circling the 99213 and writing in a $127 fee.

42.     For example, Team Health changed the bill in one March 28, 2005 case of sinusitis/bronchitis from a Level 2 charge (CPT code 99212) to a Level 3 charge (CPT code 99213), by crossing through Relator' circle of 99212 with $103 fee and instead circling the 99213 and writing in a $127 fee. The patient was a member of the Blue Cross Blue Shield Federal Employee Program's Government-Wide Service Benefit Plan.

43.     For example, Team Health charged a patient in one April 24, 2005 case involving a patient who hurt her finger in a car door for a Level 3 visit (CPT code 99213) despite the fact that the doctors' documentation of "jammed rt. ring finger" was too brief of an examination to qualify for a Level 3 visit payment.

44.     For example, Team Health agents changed Relator's bill in one July 12, 2005 case involving hyperlipidemia from a Level 2 charge (CPT code 99212) to a Level 3 charge (CPT code 99213), by crossing through Relator' circle of 99212 with $103 fee and instead circling the 99213 and writing in a $127 fee. The Team Health coders upcoded the bill by claiming that his note that the patient had "past medication use" was an additional diagnosis that justified changing

Complaint for Damages Under the Federal False Claims Act

the code to level 3, even though the patient's past medication use did not cause Relator to undertake any additional actions.

## Defendants Supervised and Trained Physicians to Ensure Upcoding Based on Fraudulent Medical Documentation

45.     Like Team Health, MMS also pressured doctors to falsify their documentation in order to increase the level of care at which visits could be billed. For example, in July 2007, MMS, invited by SRP owner Dr. Rogers and his agent Dr. Shouse, gave a presentation to Relator and other physicians at Corcoran District Hospital on how to document their cases. MMS told the doctors that Medicaid and Medicare would accept a Level 5 billing code if the documentation indicated that the physician had reviewed all ten organ systems. MMS encouraged the doctors to routinely mark that they had reviewed all ten organ systems in order to upcode their billing to achieve a Level 5 case in as many cases as possible. For the vast majority of patients seen in the emergency room, there would be no medical necessity to review all ten organ systems and no time to do so. Recognizing this, MMS encouraged the doctors to use the five second step of checking or writing "all other systems negative" on the T-System variant form to indicate that different physiologic systems had been reviewed, pressuring the physicians to do so even when they had not, in fact, been reviewed. MMS explained that as long as the doctors had actually checked those few systems that relate to the chief complaint - "the pertinent negatives" – the "all other systems negative" language could be used to simulate a ten system review. MMS also claimed that not checking ten areas of review "commonly" leads to a "down coded" result. Doctors were told that it is a "deficiency" not to get to ten review of systems ("ROS") results on any reasonably sick patient, effectively requiring the physicians to falsify the documentation in order to increase billings.

46.     At the same July 2007 presentation, MMS told ER doctors to document that they checked for nerve function after a splint was applied in order to increase billing, even though half circumference splints rarely, if ever, affect nerve function. Doctors were also told to document that they had removed a foreign object – regardless of size - when suturing to increase a billing level, or to claim that they had put in facial stitches (for under the chin) to increase the billing by two levels. Doctors were told to emphasize, imply, or falsify that they had supervised nurses during IV hydration of a patient in order to increase billing levels – though in this low volume setting the physician might leave the facility as the IV hydration continued and was completed. MMS told doctors that they were expected to document their patient interactions in a way that the

Complaint for Damages Under the Federal False Claims Act

ER group owner reached a goal of at least 6% of their patients qualifying for billing as "critical care" patients, one step higher than a Level 5 billing.

47.    In order to keep track of how effective they were at getting doctors to falsify, upcode, and augment chart records for increased billings, MMS kept a record called the Missing Documentation Log. This record kept track of bills that had been "downcoded" by Medicaid, Medicare, and other insurers because doctors did not follow their suggestions for documentation. MMS kept track of the amount of money lost per doctor, and passed the records out to physician supervisors who hired and oversaw independent contracting physicians like Relator. MMS specifically kept track of losses of revenue due to "inadequate" review of systems ("ROS") documentation which resulted in visits being "downcoded" in payment level from a Level 5 to a Level 4, a Level 5 to a Level 3, or a Level 4 to a Level 3.

48.    MMS also monitored doctors for missing "key items" of documentation, and kept a log of all these missing items of documentation that would result in a bill being "downcoded." These logs were passed out to physician supervisors who hired and oversaw independent contracting physicians like Relator, and were an attempt to force the physicians to falsify their documentation in order to increase their billings. Relator was one of those physicians who was directed to see the reports that would be generated by MMS to the group owner, Dr. Rogers; the purpose of such viewing was to intimidate physicians into upcoding. This setting was the convergence of an aggressive owner (SRP), an aggressive template (a T-System variant), and an aggressive biller (MMS). And because the hospital was rural, the payor was overwhelmingly Medicare and MediCal.

49.    The Defendants followed this policy and procedure even though the documentation in the medical records for the majority of the Medicaid and Medicare patients could not support a Level 3 or above service. Patients in a flu epidemic, for example, come looking for antibiotic support, and usually do not pose a complex problem.

50.    The Defendants were able to submit nearly all claims to Medicaid and Medicare as Level 3 or above without being detected because CMS does not require providers to submit the backup medical documentation with the claim. Their claims forms only showed the patient's name and recipient number, date of treatment, the treating physician, the CPT Code, the diagnosis code, and the amount billed. When ER documentation is sent, it is purposefully augmented by design.

51.    Through at least 2010, the Defendants deliberately upcoded all possible Medicaid

-15-

1 and Medicare claims as Level 3 or above for virtually every patient treated in each of the
2 hospitals with which they had contracts.

3   52.   The California Department of Health Care Services (DHCS), associated service
4 agencies, and Medicare paid and continues to pay all or substantially all of the false claims
5 submitted by the Defendants.

## The T-System Upcode Methodology

6   53.   T-System's entire coding and charting system was designed to upcode bills and
7 maximize payout by Medicare, Medicaid and other insurers. T-System designed its forms in a
8 way that makes practical documentation of treatment more difficult but makes coding and billing
9 easier and more lucrative. Likewise, by employing a system of broad categorization and
10 checklists from the initial nurse assessment through the physician treatment for a given visit, T-
11 System again sacrificed the standard of care for greater ease of coding and billing. More than this,
12 T-System actually trained physicians and other personnel to deliberately upcode by using
deceptive charting practices that continue to the present.

13   54.   CMS's Documentation Guidelines explain that history, examination and medical
14 decision-making are the key components in selecting the level of E/M service. However, in the T-
15 System documentation, as used or encouraged by most of these Defendants and by MMS, these
16 three key components are discarded in favor of counting simple checkmarks. As shown above,
17 the number of the body or organ systems a physician must review or examine for two of these
18 three key components (history and examination) were more than cut in half by T-System and
MMS (i.e., from at least 10 organ systems to only 4-10 organ systems for the history component).
19 T-System and MMS decided that coders could collect the number of Review of Systems points
20 created from two places on the medical documentation - the Pertinent Negatives near the Chief
21 Complaint and the Review of Systems. Normally, these are kept far apart in medical charting,
22 because they have very different purposes. In the T-System and MMS forms they are positioned
23 closely together for easy counting, though the medical story of the patient is thereby ruined. For
24 example, a September 13, 2009, copy of a filled out T-System chart has a Review of Systems
25 (ROS) section which does not even have room for the doctor to write reasonable notes on the
26 different organ systems, and is clearly designed and used as a list to be quickly checked off rather
than a document for an in-depth review of organ systems.

27   55.   A Review of Systems is taught in medical school and residency as the last step in a
28 patient's history. It is a matter of looking for problems other than the presenting complaint. In the

-16-

1  Bates' Guide to a Physical Examination and History Taking, Seventh Edition, the position of the
2  Review of Systems is clear: Last before the physical. The text makes it clear that pertinent
3  positive and negative symptoms dealing with the present illness belonged in the History of
4  Present Illness section (HPI), and not the Review of Systems section (ROS). However, T-System
   and MMS folded these contrasting areas of medical documentation together in order to achieve
5  higher reimbursements from Medicaid, Medicare, TRICARE and state health care systems.

6      56.    The purpose of the T-System form is clear: to generate unjustifiably upcoded
7  billing.

8      57.    In order to promote the scheme to overcharge Medicaid, Medicare, TRICARE, and
9  other insurance payors, T-System provided training to physicians that included specific examples
10 of how to overbill.

11     58.    For example, on a T-System form for training emergency room physicians in their
   2008 "Emergency Physicians Instruction Manual", the T-System company trained physicians to
12 mark "all systems neg except as marked" under the review of systems section (ROS), despite the
13 fact that the example patient would not need all ten systems reviewed for focal abdominal pain
14 lasting 12 hours in a 28 year old male.

15     59.    For example, the T-System company trained emergency room physicians to set
16 their billing goals for level 5 - the highest reimbursements for the most critical cases, which
17 required for the ROS section that the physician marked the "total ten systems and Social History
   and Family History." The T-System 2008 Emergency physician training manual went on to urge
18 them to "record Past History for Level 4 and add Family or Social History for Level 5" –
19 specifically identifying which levels to code as a goal on typical cases for maximum
20 reimbursement – despite the fact that most cases would not legitimately rise to level 4 or level 5
21 severity.

22     60.    In another example, the T-System company trained emergency room physicians to
23 move a "cough" over to the review of systems section of the "T-sheet," which is good for
   increased billings, but breaks up the normal wide angle interview looked for in overlapping
24 causes. The quality of the physician interaction would go down when a history is broken apart as
25 shown in the T-System example – but the intent was to increase as many cases to Level 4 and
26 Level 5 payment as possible. Breaking up a history often leads to wrong diagnosis and thus
27 wasted resources - prolonged admission or second trip to the ER. Careful history is 90% of a
28 correct diagnosis and breaking it apart is unsafe and very costly.

Complaint for Damages Under the Federal False Claims Act

61.    The 2008 T-System Emergency physician training manual encouraged physicians to check a box on the "T-sheet" signifying the completion of the ten areas of the ROS interview, and the company even showed doctors how to avoid a negative finding in a government audit of their billing practices. The company trained physicians that "at least one positive finding should be marked in the ROS before this caveat can be used."

62.    However, the T-System company was aware that they were training physicians to fraudulently check the box as to the completion of the ten area ROS, despite the fact that the physicians were not actually conducting ten area reviews of systems. In one example case in their physician training manual, the company instructed physicians to mark "all systems neg. except as marked" for a child with a fever, despite the fact that they would have known that a physician would not be conducting a psychological evaluation to complete the neurological assessment portion of the ROS. The presumption is that the government could not re-interview families to catch the augmentation.

63.    T-System pushed its upcoding methodology onto other medical professionals, such as primary care physicians in their March, 2007 "Instruction Manual." For example, on pages 5 – 6 the manual used a practice "T-sheet" to show physicians how to turn a simple two day fever at home into an expensive, upcoded visit. First, the example T-System chart moved the information about the fever at home over to Review of Systems section to inflate the ROS section and dilute the history section. Normally, the ROS section is meant to capture a physician's review of any systems other than the main illness (thus a sign of completeness). However, in its example, T-System moved all of the symptoms over to review of systems for billing ease although it weakens the HPI (history of present illness). Thus the ROS – the billing center pole – is falsely inflated in the T-System training example. The example goes on to show that a chest x-ray is ordered for the patient, who only had a two day illness and a "mild-dry" cough – unless the example physician could give it more context, there would be no need for a chest x-ray. Here in the T-System's example, a level two visit has been inflated to level four. "Total face to face time" with the physician was left off this sheet, but later was added to page 10 of the document. There, all of the face to face time with the patient was documented as if it were a "visit dominated by counseling," possibly in order to upcode for a "counseling" fee.

64.    The March 2007 Primary Care Instruction Manual again encourages the total breakup of the narrative story in the chart. T-System was training physicians to spread a few sentences all over the chart to make it appear that the patient's complaint affected many systems,

Complaint for Damages Under the Federal False Claims Act

1 when in actuality the complaint was focused on a specific area. For example, for a patient with
2 "dizziness," the T-System Instruction Manual shows the physicians how to put some of the
3 information in a certain "gray" zone on their chart for higher billing purposes. In fact, dizziness
4 particularly needs a sequential story of positive events and then a second paragraph about
5 "pertinent negatives" for which there is no room. By breaking up the narrative, the T-System
6 forms and training manuals inflate billing and revenue and result in poor care and medical
documentation of limited diagnostic usefulness.

7 65. The T-System's Primary Care Instruction Manual goes on to promote false billing
8 in other medical specialties as well, such as the endocrinologist sheets which did not allow room
9 for a narrative story and has grayed in areas showing them where to mark in order to move to a
10 higher billing level.

11 66. In a press release from 2006, T-System is noted to have a "nearly 10-year
relationship ... with Team Health and its clients." Team Health's "clients" were hospitals. While
12 Relator was with Team Health, his ER onsite manager suggested that the physicians would end
13 up with less money per hour if they did not use the T-System forms.

14 67. In service to its avowed goal of maximizing billing for its client hospitals, T-
15 System worked with those hospitals to put in place practices and procedures to upcode medical
16 visits most efficiently. These practices and procedures included training nurses and "first line"
17 staff to select T-Sheets most amenable to upcoding, implementing coding matrices that did not
comply with CMA guidelines, and cutting physicians out of the coding process in favor of billing
18
19 68. While T-System and MMS used some of the CPT's own clinical examples, T-
System and MMS placed them in a higher level of service category than the CPT requested.
20 Alternatively, T-System and MMS dropped the CPT's requirement that the condition be a "well
21 documented part of a thorough investigation." As compared to the CPT, T-System's and MMS's
22 coding matrices generally reflected a lessened investigation of the severity and complexity of the
23 medical conditions that were required for each level of service.

**Valley Manipulated Language to Generate Upcoding**

24 69. Defendant Valley knowingly and intentionally submitted claims to state and
25 federal health care systems that were based on the wrong criteria and were not supported by the
26 documentation in the patient's medical records. For example, Valley's June 2000 "Physicians
27 Manual" instructed physicians to write their diagnosis falsely to "imply some urgency of care".
28 The manual explained that "It is usually possible to do this without stretching the truth too far,

-19-
Complaint for Damages Under the Federal False Claims Act

and certainly without fabricating a diagnosis," but that "[d]oing so does require[s] careful wording of the diagnosis by the E.D. physician." Valley went on to instruct physicians to use diagnoses that would not be rejected as non-urgent by payors, most often incorporating the word "acute" in the diagnosis. They were instructed to never use the word "chronic" in any admitting diagnosis – falsely claiming that no conditions were chronic in order to dramatically increase their billing. The instructions gave a list of Symptoms/Diagnosis that physicians were told "Do Not Use," side-by-side with a list of "Alternate Diagnosis" descriptions the physicians were instructed to use to maximize reimbursement, as follows:

List of Symptoms/Diagnosis

| Do Not Use | Alternate Diagnosis |
|---|---|
| 1. Anemia | 1. Do not use as primary diagnosis |
| 2. Alcoholic | 2. Acute ETOH Abuse/Overdose |
| 3. Arthritis | 3. Acute Exacerbation (Rheumatoid?) (Degenerative?) Arthritis |
| 4. ASHD (arteriosclerotic heart disease) | 4. Do not use as primary diagnosis |
| 5. Asthenia | 5. Do not use as primary diagnosis |
| 6. Asthma | 6. Acute Asthmatic Bronchitis |
| 7. Ataxia | 7. Acute Ataxia Secondary to ___ |
| 8. Back Injury | 8. Acute Lumbo-Sacral Strain |
| 9. Bronchitis | 9. Acute Bronchitis or Acute Respiratory Tract Infection |
| 10. Bursitis | 10. Acute Bursitis or Acute Tenosynovitis |
| 11. Ca (where?) | 11. Do not use as primary diagnosis |
| 12. Cancer with Metastasis | 12. Do not use as primary diagnosis |
| 13. Cardiac | 13. Acute Cardiac Failure |
| 14. C.V.A. (date?) | 14. (R) Hemiparesis (Secondary Acute CVA) |
| 15. Cerebral Vascular Insufficiency | 15. Do not use as primary diagnosis |
| 16. Chest Pain | 16. Acute Chest Pain secondary to Muscle Strain R/O MI |
| 17. Cholecystitis | 17. Acute Cholecystitis |
| 18. Cholelithiasis | 18. Acute Cholecystitis with Cholelithiasis |
| 19. Chronic (use of the word in any admitting diagnosis) | 19. Do not use as a primary diagnosis |
| 20. Chronic Brain Syndrome | 20. Do not use as a primary diagnosis |
| 21. Chronic Coronary Insufficiency | 21. Acute Chest Pain with Chronic etc. |
| 22. Cirrhosis of Liver | 22. Acute ETOH Abuse with chronic (type) Cirrhosis |
| 23. Concussion | 23. Acute Head Injury |
| 24. Congestive Heart Failure | 24. Acute Congestive Heart Failure |
| 25. Dehydration | 25. Acute Dehydration Secondary to Fluid Loss |
| 26. Dental (peridontal) | 26. Acute Dentalgia |

Complaint for Damages Under the Federal False Claims Act

| | |
|---|---|
| 27. Depression | 27. Acute Depression (with or without suicidal intent) |
| 28. Dermatitis | 28. Acute Contact Dermatitis |
| 29. Diabetes or Diabete Mellitus | 29. Acute Hyper or Hypo-glycemia Secondary Diabites Mellitus |
| 30. Diverticulitis | 30. Acute Diverticulitis |
| 31. Dizziness or Dizzy Spells | 31. Acute Vertigo-Secondary to ___ |
| 32. Epilepsy | 32. Acute Grand Mal Seizure or Secondary to Seizure Disorder |
| 33. Emphysema | 33. Acute S.0.8. Secondary to Emphysema |
| 34. Epistaxis | 34. Acute Epistaxis |
| 35. Exogenous Obesity | 35. Do not use as primary diagnosis |
| 36. Fainting Spells | 36. Acute Syncopal Episode Secondary to Cerebrovascular Insufficiency |
| 37. Fecal Impaction | 37. Acute Fecal Impaction |
| 38. FUO (fever-unknown origin) | 38. Acute Febril Illness? Etiology |
| 39. Gallbladder Disease | 39. Acute Cholecystitis |
| 40. Gallstones | 40. Acute Cholecystitis with Cholelithiasis |
| 41. Gangrene | 41. Acute Vascular Necrosis |
| 42. Gastroenteritis | 42. Acute Gastroenteritis |
| 43. Heart Failure/Disease | 43. Acute Congestive Heart Failure |
| 44. Herpes Zoster | 44. Acute Herpes Zoster |
| 45. Hodgkins Disease | 45. Do not use as primary diagnosis |
| 46. Hypertension | 46. Acute Hypertensive Episode |
| 47. Influenza | 47. Acute viral illness |
| 48. Injured Spine, Hip, Ankle, etc. | 48. Acute Contusion; Acute Sprain |
| 49. Irritable Bowel Syndrome | 49. Acute Abdominal Pain Secondary to ___ |
| 50. Labyrinthitis | 50. Acute Labyrinthitis |
| 51. Low Back Sprain/Strain/Pain | 51. Acute Lumbosacral Strain |
| 52. Malnutrition | 52. Acute Dehydration Secondary to inadequate fluid intake |
| 53. Megacolon | 53. Acute Abdominal Pain Secondary to ___ |
| 54. Nephritis | 54. Acute (Pyelo) Nephritis |
| 55. Neuropathy | 55. Acute (eg.post-traumatic) Neuropathy |
| 56. Parkinson's Disease (L-Dopa Theraphy) | 56. Do not use as primary diagnosis |
| 57. Pneumonitis | 57. Acute Pneumonitis |
| 58. Post-Menopausal Bleeding | 58. Acute Vaginal Bleeding-Post Menopausal |
| 59. Psoriasis | 59. Acute Exacerbation of Psoriasis |
| 60. Psychoneurotic Disorder | 60. ego Acute Anxiety/Depression |
| 61. Rheumatism | 61. Acute Rheumatoid Disease |
| 62. Rheumatoid Arthritis | 62. Acute Exacerbation of Rhuematoid Arthritis |
| 63. Sciatica | 63. Acute Sciatic Neuropathy Secondary to ___ |
| 64. Senility | 64. Acute Senile Dementia |
| 65. Sprain (knee etc.) | 65. Acute Sprain (Strain) |
| 66. Stasis Ulcer | 66. Acute Exacerbation of Stasis Ulcer Acute |

Complaint for Damages Under the Federal False Claims Act

| | Infection of Stasis Ulcer |
|---|---|
| 67. Stroke | 67. Acute Hemiparesis Secondary to Cerebrovascular Insufficiency |
| 68. Syncope | 68. Acute Syncopal Episode Secondary to Cerebrovascular Insufficiency |
| 69. Trigeminal Neuralgia | 69. Acute exacerbation of Trigeminal Neuralgia |
| 70. Tuberculosis | 70. Do not use as primary diagnosis |
| 71. Ulcers | 71. Acute abdominal Pain, Secondary Peptic Ulcer Disease |
| 72. Urinary Tract Infection | 72. Acute Urinary Tract Infection |
| 73. Vertigo | 73. Acute Vertigo Secondary to _ |
| 74. Viremia (virus in blood) | 74. Acute Viral Illness |
| 75. Weakness | 75. Do not use as primary diagnosis |
| 76. Weakness in Legs | 76. Do not use as primary diagnosis |
| 77. Gout | 77. Acute Exacerbation of (Gouty Arthritis) |

70.     Valley continued to push for more diagnoses to be falsified as "acute" or otherwise changed in order to ensure overpayment. For example, in an August, 2005 letter from the Valley Compliance Officer, Valley physicians were told to improve the "art of writing a diagnosis" by frequently adding the word "acute:"

| May be Improper Wording | Alternate Wording if Applicable |
|---|---|
| 1. Anemia | 1. Do not use as a primary diagnosis |
| 2. Anxiety | 2. Acute anxiety (or hyperventilation) |
| 3. Asthma | 3. Acute bronchospasm (or asthma exacerbation) |
| 4. Back Pain | 4. Acute lumbar strain |
| 5. Bronchitis | 5. Acute bronchitis: cough |
| 6. Chest Pain | 6. Acute chest pain secondary to ? |
| 7. Cholecystitis | 7. Acute abdominal pain; acute cholecystitis |
| 8. Concussion | 8. Altered Mental Status; Acute dosed head injury |
| 9.CHF | 9. Acute Dyspnea; Congestive heart failure exacerbation |
| 10. Constipation | 10. Acute abdominal pain: fecal impaction (or obstipation) |
| 11. Dehydration | 11. Hypotension or Syncope or Dizziness or ?; acute dehydration |
| 12. Dental pain | 12. Acute face pain; mouth abscess/cellulitis; fever (Note: Do not mention tooth if possible) |
| 13. Diabetes | 13. Acute hyper/hypoglycemia |
| 14. Hypertension | 14. Hypertensive Urgency/Crisis/Emergency |
| 15. Sciatica | 15. Acute low back pain with sciatica |
| 16. Syncope | 16. Acute syncope; (etiology if known) |
| 17. URI | 17. Fever, cough, URI |
| 18. UTI | 18. Acute urinary tract infection |
| 19. Vaginal bleeding | 19. Acute vaginal bleeding secondary to ? |
| 20. Weakness | 20. Do not use as a primary diagnosis |
| | |

Complaint for Damages Under the Federal False Claims Act

71.     Valley used the above physician's manual instructions and compliance officer instructions to falsify diagnoses with letters exhorting doctors to implement their illegal profit generating plan. Valley offered doctors who worked 1600 hours the opportunity to become stockholding owners in the company. The Valley scheme was highly effective, because it resulted in high amounts of profit sharing among the physicians. For example, a March 11, 2005 letter noted that "[o]nce again, Valley set a new record for profit sharing, paying out over 1 million dollars in bonuses for the last 6 months of 2004." By July 2006, Valley was trying to force Relator to falsify his diagnoses for greater profits. In a company-wide phone call, he was told "we will assign codes for you... you document." This phone call was mandatory for all Valley physicians at Corcoran District Hospital regardless of location – even those on duty. A taped copy was also kept by Valley (if needed by those missing the phone call).

72.     Valley instructed physicians to make their patients CPT level 5 rather than level 4 to get 50% more payment, and told them that one way to get there is to document "a complete systems review is otherwise negative", and that this falsification only takes "10 seconds." Physicians were told that a higher level of billing, critical care, paid 37% more than CPT level 5, and that doctors could get away with falsifying a patient as needing critical care who was "on the edge" – the patient did not truly need to be unstable.

73.     Valley sent Relator a letter and chart review on February 16, 2007, in which it claimed that Relator had not documented his charts for the purpose of getting maximum reimbursements. For example, Relator was warned that one of his charts contained a Review of Systems that "warranted a 99285" (level 5 – high reimbursement), but that he had reviewed less than 10 organs, so the company could not receive the high reimbursement. The patient had been admitted to Corcoran District Hospital on December 11, 2006 with Medicare and Medicaid (Medi-Cal) as his sources of insurance. The company wanted Relator to check off the organ system reviews on a checklist, rather than actually taking the time to interview the patient and study them for any organ system problems that might be relevant. The company also complained that Relator had not checked a splint on a sprained wrist, which they intended to code and bill for,

Complaint for Damages Under the Federal False Claims Act

1  however the doctor does not need to check a splint after application by the ER staff because the
2  splints are only half way around the limb. The company also tried to bill him for being present
3  with a patient receiving an IV, even though he was most likely billing on a different patient at the
4  time.

5      74.    For example, a patient complained about a bill generated on December 25, 2006
6  for $220 for seeing Relator for a "toe abrasion", because Valley, apparently doing business as
7  "Corcoran Emergency Med Grp Inc." had billed it at an exorbitant rate as a level 3 CPT visit
8  (CPT code 99283).

9      75.    In addition to altering the CPT and changed diagnosis criteria, the Defendants also
10  followed a practice of billing for Medicaid and Medicare patients based on fraudulently
11  augmented medical documentation, using forms and methods provided by T-System and MMS.
12  Medicaid and Medicare regulations require that billing be based entirely on what is reflected in
13  the patient's medical records so that the claim will be appropriate to the problem encountered
14  without augmentation.

15      76.    Relator is informed and believes that Defendants deliberately and improperly
16  coded the majority of these claims, resulting in millions of dollars in overpayments by state and
17  federal health care systems.

18      **Medicare And Medicaid Fraud - Fraudulent Billing Of Emergency Room Procedures**

19      77.    The Defendants also knowingly and intentionally submitted false claims to DHCS
20  (for Medicaid reimbursement) and Medicare as a result of improper coding of emergency room
21  procedures. These practices are documented in medical records and training letters referenced
22  above throughout the time period covered by this complaint.   Relator saw the patterns repeating
23  as several groups, for example, rotated through Corcoran District Hospital.

24      78.    Again, the Defendants knowingly and intentionally disregarded the established
25  CPT coding requirements by engaging in the above fraudulent billing practices or procedures.
26  The Defendants deliberately coded the majority of their procedure claims improperly, resulting in
27  millions of dollars of overpayments by state and federal health care systems.  T-System provided
28  the template for the fraud.

-24-

## **These Fraudulent Practices Have Been Adopted By Providers In Other States**

79.     Plaintiff is informed and believes and theron alleges that these same fraudulent practices for emergency room contracts and billing have been utilized nationwide by Defendants T-System (based in Texas), Team Health (based in Tennessee), and MMS (based in California).

80.     For example, Team Health claims in their March 12, 2010, 10-K SEC filing that they serve approximately 530 hospital clients, clinics and surgical centers in 48 states, and the company advertises positions available in Alabama, Arizona, California, Colorado, Delaware, Florida, Georgia, Hawaii, Idaho, Indiana, Kentucky, Louisiana, Maryland, Missouri, Mississippi, North Carolina, New Hampshire, New Jersey, New York, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, Washington, and West Virginia.

81.     For example, Marina Medical Billing Services claims on their website to actively work with clients in 12 states, and Sierra Rural Physicians is a physician practice group that provides a window into MMS' fraudulent practices. Valley claims on its website to have locations in California, Texas, New Mexico, and Tennessee. On information and belief, Defendants were, at all relevant times, aware of the fraudulent practices described in this complaint, and that the fraudulent billing practices described herein have been used in all the states in which Defendants operate.

82.     As demonstrated above, this False Claims Act case involves systematic fraudulent billing practices by Defendants that were specifically designed to overcharge federal and state health care programs by upcoding nearly all healthcare visits. T-System designed and implemented a comprehensive program for generating upcoding and trained its hospital clients, physician clients and their staff to upcode. Defendants trained physicians and other staff to ignore CMA guidelines, to deceptively document healthcare visits and to use the other methods described above to generate unwarranted billing increases. As a result of this intentional and systematic upcoding, the state and federal governments paid Defendants millions of dollars to pay artificially and deceptively enhanced, manipulated, and inaccurate bills. Relator Phillips has personal knowledge of these fraudulent billing practices and brings this action to put a stop to Defendants' fraudulent practices and recover for state and federal healthcare systems all funds

-25-
Complaint for Damages Under the Federal False Claims Act

1  paid as a result of Defendants' false and misleading billing practices.

2  **COUNT ONE**
3  **FEDERAL FALSE CLAIMS ACT VIOLATIONS**
   **(AGAINST ALL DEFENDANTS)**

4       83.    Relator repeats and realleges paragraphs of this complaint above as if fully set
5  forth herein.

6       84.    This is a civil qui tam action brought by Dr. Charles Phillips and the government
7  of the United States to recover treble damages and civil penalties under 31 U.S.C. §3729(a) of the
8  False Claims Act. 31 U.S.C. §3729(a) provides, in relevant part, liability for any person who- (1)
9  knowingly presents, or causes to be presented, to an officer or employee of the United States
10 Government or a member of the Armed Forces of the United States a false or fraudulent claim for
11 payment or approval.

12      85.    Defendants violated 31 U.S.C. §3729(a) in that from at least 1999 through 2010,
13 they repeatedly, willfully and intentionally presented, or caused to be presented, false claims to
14 the United States Government by and through their actions more fully described above.

15      86.    The United States Government, by and through its fiscal intermediaries and
16 unaware of Defendants' fraudulent billing practices, paid the claims submitted to it based on these
17 fraudulent practices.

18      87.    Had the United States Government known that Defendants submitted claims to it
19 based on Defendants' fraudulent billing practices, it would not have paid those claims.

20      88.    As a result of Defendants' violations of 31 U.S.C. §3729(a), the United States
21 Government has been damaged in an amount in excess of millions of dollars, exclusive of
22 interest.

23      89.    Relator is a private person with direct and independent knowledge of the
24 allegations of this Complaint, who has brought this action pursuant to §3730(b) on behalf of
25 himself and the United States Government.

26 / / /
27 / / /
28

-26-
Complaint for Damages Under the Federal False Claims Act

## COUNT TWO
## CONSPIRACY TO SUBMIT FALSE CLAIMS (31 U.S.C. § 3729(A)(3))
## (AGAINST ALL DEFENDANTS)

90.     Relator re-alleges and incorporates each of the allegations of this Complaint as if fully set forth herein.

91.     Defendants combined, conspired, and agreed together with physicians and others to defraud the United States by knowingly causing false and illegal claims to be submitted to the United States for the purpose of having those claims paid and ultimately profiting from those false claims. Defendants committed other overt acts set forth above in furtherance of that conspiracy, all in violation of 31 U.S.C. § 3729(a)(3), causing damage to the United States.

92.     The United States, unaware of the falsity of the claims, and in reliance on the accuracy thereof, made payment upon the false or fraudulent claims and was therefore damaged.

## PRAYER FOR RELIEF UNDER FEDERAL FALSE CLAIMS ACT

93.     Relator respectfully requests this Court to enter judgment against Defendants, as follows:

(a)     That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims and fraud alleged within this Complaint, as the Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.* provides;

(b)     That civil penalties at the maximum amount allowed by law be imposed for each and every false claim that Defendants presented to the United States;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)     That the Court grant permanent injunctive relief to prevent any recurrence of violations of the False Claims Act for which redress is sought in this Complaint;

(e)     That the Relator be awarded the maximum percentage of any recovery allowed to them pursuant the False Claims Act, 31 U.S.C. §3730(d)(1),(2);

(f)     That this Court award such other and further relief as it deems proper.

## COUNT THREE
### VIOLATION OF THE ARKANSAS MEDICAID FRAUD FALSE CLAIMS ACT
### (AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC,
### T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)

94. Relator re-alleges and incorporates each of the allegations of this Complaint as if fully set forth herein.

95. Additionally, Relator states that the course of conduct described in this Complaint was a nationwide practice of Defendants. On information and belief, Defendants Team Health, Inc., Team Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., all conduct business in the State of Arkansas. Upon information and belief, these Defendants' actions described herein occurred in the State of Arkansas as well.

96. This is a qui tam action brought by Relator and the Arkansas to recover treble damages and civil penalties under the Arkansas Medicaid Fraud False Claims Act, A.C.A. § 20-77-901 et seq.

97. The Arkansas Medicaid Fraud False Claims Act § 20-77-902 provides liability for any person who-

Knowingly makes or causes to be made any false statement or representation of a material fact in any application for any benefit or payment under the Arkansas Medicaid program;

At any time knowingly makes or causes to be made any false statement or representation of a material fact for use in determining rights to a benefit or payment;

98. Defendants Team Health, Inc., Team Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., violated the Arkansas Medicaid Fraud False Claims Act § 20-77-902(1) (2) from at least 1999 to the present by engaging in the fraudulent and illegal practices described herein.

99. Defendants furthermore violated Arkansas Medicaid Fraud False Claims Act § 20-77-902(1) & (2) and knowingly caused thousands of false claims to be made, used and presented to Arkansas from at least 1999 to the present.

100. Arkansas, by and through the Arkansas Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims

-28-

Complaint for Damages Under the Federal False Claims Act

1    submitted by health care providers and third payers in connection therewith.

2        101.    Compliance with applicable Medicare, Medicaid and the various other federal and

3    state laws cited herein was an implied, and upon information and belief, also an express condition

4    of payment of claims submitted to Arkansas is connection with Defendants' fraudulent and illegal

5    practices.

6        102.    Had the Arkansas known that these Defendants were violating the federal and state

7    laws cited herein, it would not have paid the claims submitted by health care providers and third

8    party payers in connection with Defendants' fraudulent and illegal practices.

9        103.    As a result of Defendants' violations of § 20-77-902(1) (2), the State of Arkansas

10   has been damaged in an amount far in excess of millions of dollars exclusive of interest.

11       104.    Relator Phillips is a private person with direct and independent knowledge of the

12   allegations of this Complaint, who has brought this action pursuant to A.C.A. § 20-77-911(a) on

13   behalf of himself and the State of Arkansas.

14       105.    This Court is requested to accept supplemental jurisdiction of this related state

15   claim as it is predicated upon the exact same facts as the federal claim, and merely asserts

16   separate damage to the State of Arkansas in the operation of its Medicaid program.

17           WHEREFORE, Relator respectfully requests this Court to award the following damages

18   to the following parties and against Defendants:

19       To the STATE OF ARKANSAS:

20           Three times the amount of actual damages which the State of Arkansas has sustained as a
             result of Defendants' fraudulent and illegal practices;
21

22           A civil penalty of not less than $5,000 and not more than $10,000 for each false claim
             which Defendants caused to be presented to the State of Arkansas;

23           Prejudgment interest; and

24           All costs incurred in bringing this action.

25       To RELATOR:

26           The maximum amount allowed pursuant to A.C.A. § 20-77-911(a) and /or any other
             applicable provision of law;
27

28           Reimbursement for reasonable expenses which Relator incurred in connection with this
             action;

Complaint for Damages Under the Federal False Claims Act

1

An award of reasonable attorneys' fees and costs; and

2

Such further relief as this court deems equitable and just.

3

**COUNT FOUR**
**VIOLATION OF THE CALIFORNIA FALSE CLAIMS ACT**
**(Cal. Gov't Code § 12650 et seq.)**
**(AGAINST ALL DEFENDANTS)**

4

5

6

106.    Relator re-alleges and incorporates each of the allegations of this Complaint as if

7

fully set forth herein.

8

107.    Additionally, Relator states that the course of conduct described in this Complaint

9

was a nationwide practice of Defendants.

10

108.    This is a qui tam action brought by Relator and the State of California to recover

11

treble damages and civil penalties under the California False Claims Act, Cal. Gov't. Code §

12

12650 *et seq.*

13

Cal. Gov't Code § 12651(a) provides liability for any person who—

14

Knowingly presents, or causes to be presented, to an officer or employee of the
state of any political division thereof, a false claim for payment or approval;

15

Knowingly makes, uses, or causes to be made or used a false record of statement

16

to get a false claim paid or approved by the state or by any political subdivision;

17

Conspires to defraud the state or any political subdivision by getting a false claim
allowed or paid by the state of by any political subdivision.

18

Is a beneficiary of an inadvertent submission of a false claim to the state or a

19

political subdivision, subsequently discovers the falsity of the claim, and fails to
disclose the false claim to the state or the political subdivision within a reasonable

20

time after discovery of the false claim.

21

109.    Defendants furthermore violated Cal. Gov't Code § 12651(a) and knowingly

22

caused hundreds of thousands of false claims to be made, used and presented to the State of

23

California from at least 1999 to the present by its violation of federal and state laws, as described

24

herein.

25

110.    The State of California, by and through the California Medicaid program and other

26

state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the

27

claims submitted by health care providers and third party payers in connection therewith.

28

111.    Compliance with applicable Medicare, Medi-Cal and the various other federal and

1  state laws cited herein was implied, and upon information and belief, also an express condition of

2  payment of claims submitted to the State of California in connection with Defendants' fraudulent

3  and illegal practices.

4    112.    Had the State of California known that Defendants were violating the federal and

5  state laws cited herein, it would not have paid the claims submitted by health care providers and

6  third party payers in connection with Defendants' fraudulent and illegal practices.

7    113.    As a result of Defendants' violations of Cal. Gov't Code § 12651(a), the State of

8  California has been damaged in an amount far in excess of millions of dollars exclusive of

9  interest.

10    114.    Relator Phillips is a private person with direct and independent knowledge of the

11  allegations of this Complaint, who have brought this action pursuant to Cal. Gov't Code §

12  12652(c) on behalf of himself and the State of California.

13    115.    This Court is requested to accept supplemental jurisdiction over this related state

14  claim as it is predicated upon the same exact facts as the federal claim, and merely asserts

15  separate damages to the State of California in the operation of its Medicaid program.

16    WHEREFORE, Relator respectfully requests this Court to award the following damages

17  to the following parties and against Defendants:

18  To the STATE OF CALIFORNIA:

19    Three times the amount of actual damages which the State of California has sustained as a
     result of Defendants' fraudulent and illegal practices;

20
     A civil penalty of up to $10,000 for each false claim which Defendants presented or
21    caused to be presented to the State of California;

22    Prejudgment interest; and

23    All costs incurred in bringing this action.

24  To RELATOR:

25    The maximum amount allowed pursuant to Cal. Gov't Code § 12652 and /or any other
     applicable provision of law;
26
     Reimbursement for reasonable expenses which Relator incurred in connection with this
27    action;

28    An award of reasonable attorneys' fees and costs; and

-31-
Complaint for Damages Under the Federal False Claims Act

1    Such further relief as this Court deems equitable and just.

2    **COUNT FIVE**
3    **VIOLATION OF THE DELAWARE FALSE AND REPORTING CLAIMS ACT**
     **(AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC,**
4    **T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)**

5         116.    Relator re-alleges and incorporates each of the allegations of this Complaint as if
6    fully set forth herein.

7         117.    Additionally, Relator states on information and belief that the course of conduct
8    described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team
9    Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., that these
10   Defendants conduct business in the State of Delaware, and that these Defendants' actions
11   described herein occurred in Delaware.

12        118.    This is a qui tam action brought by Relator and the State of Delaware to recover
13   treble damages and civil penalties under the Delaware Medicaid False Claims Act, 6 Del. C. §
14   1201 et seq.

15        6 Del. C. § 1201 et seq. provides liability for any person who—
16        Knowingly presents, or causes to be presented, directly or indirectly, to an officer
          or employee of the Government a false or fraudulent claim for payment or
17        approval;

18        Knowingly makes, uses or causes to be made or used, directly or indirectly, a false
          record or statement to get a false or fraudulent claim paid or approved;
19
          Conspires to defraud the Government by getting a false or fraudulent claim
20        allowed or paid;

21        Knowingly makes, uses, or causes to be made or used a false record or statement
          to conceal, avoid, increase or decrease an obligation to pay or transmit money or
22        property to or from the Government

23        119.    Defendants violated 6 Del. C. § 1201 and knowingly caused hundreds of
24   thousands of false claims to be made, used and presented to the State of Delaware from 1999 to
25   the present by its violation of federal and state laws, as described herein.

26        120.    The State of Delaware, by and through the Delaware Medicaid program and other
27   state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the
28

                                        -32-

1   claims submitted by health care providers and third party payers in connection therewith.

2       121.    Compliance with applicable Medicare, Medicaid and the various other federal and

3   state laws cited herein was an implied, and upon information and belief, also an express condition

4   of payment of claims submitted to the State of Delaware in connection with Defendants'

5   fraudulent and illegal practices.

6       122.    Had the State of Delaware known that Defendants were violating the federal and

7   state laws cited herein, it wound not have paid the claims submitted by health care providers and

8   third party payers in connection with Defendants' fraudulent and illegal practices.

9       123.    As a result of Defendants' violations of 6 Del C. § 1201(a), the State of Delaware

10  has been damage in an amount far in excess of millions of dollars exclusive of interest.

11      124.    Defendants did not, within 30 days after it first obtained information as to such

12  violations, furnish such information to officials of the State responsible for investigating false

13  claims violations, did not otherwise fully cooperate with any investigation of the violations, and

14  have not otherwise furnished information to the State regarding the claims for reimbursement at

15  issue.

16      125.    Relator Phillips is a private person with direct and independent knowledge of the

17  allegations of this Complaint, who have brought this action pursuant to 6 Del. C. § 1203(b) on

18  behalf of himself and the State of Delaware.

19      126.    This Court is requested to accept supplemental jurisdiction of this related state

20  claim as it is predicated upon the exact same facts as the federal claim, and merely asserts

21  separate damage to the State of Delaware in the operation of its Medicaid program.

22      WHEREFORE, Relator respectfully requests this Court to award the following damages

23  to the following parties against Defendants:

24  To the STATE OF DELAWARE:

25      Three times the amount of actual damages which the State of Delaware has sustained as a
        result of Defendants' fraudulent and illegal practices;
26

27      A civil penalty on not less then $5,500 and not more than $ 11,000 for each false claim
        which Defendants caused to be presented to the State of Delaware;

28      Prejudgment interest; and

-33-
Complaint for Damages Under the Federal False Claims Act

1

2    All costs incurred in bringing this action.

3    To RELATOR:

4        The maximum amount allowed pursuant to 6 Del C. § 1205,and /or any other applicable
         provision of law;
5
         Reimbursement for reasonable expenses which Relator incurred in connection with this
6        action;

7        An award of reasonable attorneys' fees and costs; and

8        Such further relief as this Court deems equitable and just.

9                                          **COUNT SIX**
                 **VIOLATION OF THE DISTRICT OF COLUMBIA PROCUREMENT REFORM**
10                                      **AMENDMENT ACT**
             **(AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC,**
11                  **T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)**

12
          127.    Relator re-alleges and incorporates each of the allegations of this Complaint as if
13
     fully set forth herein.
14

15        128.    Additionally, Relator states on information and belief that the course of conduct

16   described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team

17   Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., that these

18   Defendants conduct business in the District of Columbia, and that these Defendants' actions

19   described herein occurred in the District of Columbia.

20        129.    This is a qui tam action brought by Relator and the District of Columbia to recover

21   treble damages and civil penalties under the District of Columbia Procurement Reform

22   Amendment Act, D.C. § 2-308.13 et seq.

23        D.C. Code § 2-30814(a) provides liability for any person who-

24       Knowingly presents, or causes to be presented, to an officer or employee of the
         District a false claim for payment or approval;
25
         Knowingly makes, uses or causes to be made or used, a false record or statement
26       to get a false claim paid or approved by the District;

27       Conspires to defraud the District by getting a false claim allowed or paid by the
         District;
28

                                             -34-

Is the beneficiary of an inadvertent submission of a false claim to the District, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the District.

130.    Defendants violated D. C. Code § 4-802(c) from at least 1999 to the present by engaging in the fraudulent and illegal practices described herein.

131.    Defendants furthermore violated D. C. Code § 2-308.14(a) and knowingly caused thousands of false claims to be made, used and presented to the District of Columbia from at least 1999 to the present by its violation of federal and state laws, as described herein.

132.    The District of Columbia, by and through the District of Columbia Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

133.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the District of Columbia is connection with Defendants' fraudulent and illegal practices.

134.    Had the District of Columbia known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

135.    As a result of Defendants' violations of D.C. Code § 2-308.14(a) the District of Columbia has been damaged in an amount far in excess of millions of dollars exclusive of interest.

136.    Relator Phillips is a private person with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to D.C. Code § 2-308.15(b) on behalf of himself and the District of Columbia.

137.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the District of Columbia in the operation of its Medicaid program.

Complaint for Damages Under the Federal False Claims Act

1     WHEREFORE, Relator respectfully requests this Court to award the following damages

2   to the following parties and against Defendants:

3       To the DISTRICT OF COLUMBIA:

4           Three times the amount of actual damages which the District of Columbia has sustained as
            a result of Defendants' fraudulent and illegal practices;
5

6           A civil penalty of not less than $5,000 and not more than $10,000 for each false claim
            which Defendants caused to be presented to the District of Columbia;

7           Prejudgment interest; and All costs incurred in bringing this action.

8
      To RELATOR:
9

10          The maximum amount allowed pursuant to D. C. Code § 2-308.15(f) and /or any other
            applicable provision of law;

11          Reimbursement for reasonable expenses which Relator incurred in connection with this
            action;
12

            An award of reasonable attorneys' fees and costs; and
13

            Such further relief as this court deems equitable and just.
14

15                                      **COUNT SEVEN**
                          **VIOLATION OF THE FLORIDA FALSE CLAIMS ACT**
16          **(AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC,**
                    **T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)**
17
            138.    Relator re-alleges and incorporates each of the allegations of this Complaint as if
18
      fully set forth herein.
19
            139.    Additionally, Relator states on information and belief that the course of conduct
20
      described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team
21
      Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., that these
22
      Defendants conduct business in the State of Florida, and that these Defendants' actions described
23
      herein occurred in the State of Florida.
24
            140.    This is a qui tam action brought by Relator and the State of Florida to recover
25
      treble damages and civil penalties under the Florida False Claims Act, West's F.S.A. § 68.081 et
26
      seq.
27
            West's F.S.A. § 68.082 provides liability for any person who-
28

                                          -36-

1    Knowingly presents or causes to be presented to an officer or employee of an
     agency a false claim for payment or approval
2
     Knowingly makes, uses, or causes to be made or used a false record or statement
3    to get a false or fraudulent claim paid or approved by an agency

4    Conspires to submit a false claim to an agency or to deceive an agency for the
     purpose of getting a false or fraudulent claim allowed or paid
5

6    141.    Defendants violated West's F.S.A. § 68.082 from at least 1999 to the present by

7    engaging in the fraudulent and illegal practices described herein.

8    142.    The State of Florida, by and through the State of Florida Medicaid program and

9    other state health care programs, and unaware of Defendants' fraudulent and illegal practices,

10   paid the claims submitted by health care providers and third payers in connection therewith.

11   143.    Compliance with applicable Medicare, Medicaid and the various other federal and

12   state laws cited herein was an implied, and upon information and belief, also an express condition

13   of payment of claims submitted to the State of Florida in connection with Defendants' fraudulent

14   and illegal practices.

15   144.    Had the State of Florida known that Defendants were violating the federal and

16   state laws cited herein, it would not have paid the claims submitted by health care providers and

17   third party payers in connection with Defendants' fraudulent and illegal practices.

18   145.    As a result of Defendants' violations of West's F.S.A. § 68.082 the State of

19   Florida has been damaged in an amount far in excess of millions of dollars exclusive of interest.

20   146.    Relator Phillips is a private person with direct and independent knowledge of the

21   allegations of this Complaint, who have brought this action pursuant to West's F.S.A. § 68.083(2)

22   on behalf of himself and the State of Florida.

23   147.    This Court is requested to accept supplemental jurisdiction of this related state

24   claim as it is predicated upon the exact same facts as the federal claim, and merely asserts

25   separate damage to the State of Florida in the operation of its Medicaid program.

26   WHEREFORE, Relator respectfully requests this Court to award the following damages

27   to the following parties and against Defendants:

28   To the STATE OF FLORIDA:

-37-
Complaint for Damages Under the Federal False Claims Act

Three times the amount of actual damages which the State of Florida has sustained as a result of Defendants' fraudulent and illegal practices;

A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of Florida;

Prejudgment interest; and

All costs incurred in bringing this action.

To RELATOR:

The maximum amount allowed pursuant to West's F.S.A. § 68.085 and /or any other applicable provision of law;

Reimbursement for reasonable expenses which Relator incurred in connection with this action;

An award of reasonable attorneys' fees and costs; and

Such further relief as this court deems equitable and just.

**COUNT EIGHT**
**VIOLATION OF THE GEORGIA STATE MEDICAID FALSE CLAIMS ACT**
**(AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC,**
**T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)**

148.    Relator re-alleges and incorporates each of the allegations of this Complaint as if fully set forth herein.

149.    Additionally, Relator states on information and belief that the course of conduct described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., that these Defendants conduct business in the State of Georgia, and that these Defendants' actions described herein occurred in the State of Georgia.

150.    This is a qui tam action brought by Relator and the State of Georgia to recover treble damages and civil penalties under the Georgia State False Medicaid Claims Act, Ga. Code Ann. § 49-4-168 *et seq.*

Ga. Code Ann. § 49-4-168.1 *et seq.* provides liability for any person who—

Knowingly presents or causes to be presented to the Georgia Medicaid program a false or fraudulent claim for payment or approval;

Knowingly makes, uses, or causes to be made or used, a false record or statement to

get a false or fraudulent claim paid or approved by the Georgia Medicaid program;

Conspires to defraud the Georgia Medicaid program by getting a false or fraudulent claim allowed or paid;

Knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay, repay or transmit money or property to the State of Georgia.

151. Defendants violated Ga. Code Ann. § 49-4-168.1 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Georgia from 1999 to the present by its violation of federal and state laws, as described herein.

152. The State of Georgia, by and through the Georgia Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

153. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Georgia in connection with Defendants' fraudulent and illegal practices.

154. Had the State of Georgia known that Defendants were violating the federal and state laws cited herein, it wound not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

155. As a result of Defendants' violations of Ga. Code Ann. § 49-4-168.1, the State of Georgia has been damaged in an amount far in excess of millions of dollars exclusive of interest.

156. Defendants did not, within 30 days after it first obtained information as to such violations, furnish such information to officials of the State responsible for investigating false claims violations, did not otherwise fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State regarding the claims for reimbursement at issue.

157. Relator Phillips is a private person with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Ga. Code Ann., § 49-4-168.2(b) on behalf of himself and the State of Georgia.

Complaint for Damages Under the Federal False Claims Act

158.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Georgia in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties against Defendants:

To the STATE OF GEORGIA:

Three times the amount of actual damages which the State of Georgia has sustained as a result of Defendants' fraudulent and illegal practices;

A civil penalty on not less then $5,500 and not more than $ 11,000 for each false claim which Defendants caused to be presented to the State of Georgia;

Prejudgment interest; and

All costs incurred in bringing this action.

To RELATOR:

The maximum amount allowed pursuant to Ga. Code Ann., § 49-4-168.2(i),and /or any other applicable provision of law;

Reimbursement for reasonable expenses which Relator incurred in connection with this action;

An award of reasonable attorneys' fees and costs; and

Such further relief as this Court deems equitable and just.

## COUNT NINE
### VIOLATION OF THE HAWAII FALSE CLAIMS ACT
### (AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC, T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)

159.    Relator re-alleges and incorporates each of the allegations of this Complaint as if fully set forth herein.

160.    Additionally, Relator states on information and belief that the course of conduct described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., that these Defendants conduct business in the State of Hawaii, and that these Defendants' actions described herein occurred in the State of Hawaii.

161.    This is a qui tam action brought by Relator and the State of Hawaii to recover

Complaint for Damages Under the Federal False Claims Act

treble damages and civil penalties under the Hawaii False Claims Act, Haw. Rev. Stat. § 661.21 et seq.

> Haw. Rev. Stat. § 661-21(a) provides liability for any person who—
>
> Knowingly presents, or causes to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval;
>
> Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;
>
> Conspires to defraud the state by getting a false or fraudulent claim allowed or paid; or
>
> Is a beneficiary of an inadvertent submission of a false claim to the State, who subsequently discovers the falsity of the claim, and fails to disclose the false claim to the State within a reasonable time after discovery of the false claim.

162. Defendants violated Haw. Rev. Stat. § 661.21(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Hawaii from at least 1999 to the present by its violation of federal and state laws, as described herein.

163. The State of Hawaii, by and through the Hawaii Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

164. Compliance with applicable Medicare, Medicaid and the various other federal state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Hawaii in connection with Defendants' fraudulent and illegal practices.

165. Had the State of Hawaii known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

166. As a result of Defendants' violations of Haw. Rev. Stat. § 661-21(a) the State of Hawaii has been damaged in an amount far in excess of millions of dollars exclusive of interest.

167. Relator Phillips is a private person with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Haw. Rev. Stat. § 661-25(a) on behalf of himself and the State of Hawaii.

1    168.    This Court is requested to accept supplemental jurisdiction of this related state
2    claim as it is predicated upon the exact same facts as the federal claim, and merely asserts
3    separate damage to the State of Hawaii in the operation of its Medicaid program.

4         WHEREFORE, Relator respectfully requests this Court to award the following damages
5    to the following parties and against Defendants:

6    To the STATE OF HAWAII:

7    Three times the amount of actual damages which the State of Hawaii has sustained as a
8    result of Defendants' fraudulent and illegal practices;

9    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim
     which Defendants caused to be presented to the State of Hawaii;

10   Prejudgment interest; and

11   All costs incurred in bringing this action.

12   To RELATOR:

13   The maximum amount allowed pursuant to Haw. Rev. Stat. § 661-27 and /or any other
14   applicable provision of law;

15   Reimbursement for reasonable expenses which Relator incurred in connection with this
     action;

16   An award of reasonable attorneys' fees and costs; and

17   Such further relief as this Court deems equitable and just.

18                                    **COUNT TEN**
19   **VIOLATION OF THE ILLINOIS WHISTLEBLOWER REWARD AND PROTECTION
                                        ACT**
20   **(AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC, T-
                SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)**
21

22        169.    Relator re-alleges and incorporates each of the allegations of this Complaint as if
23   fully set forth herein.

24        170.    Additionally, Relator states on information and belief that the course of conduct
25   described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team
26   Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., that these
27   Defendants conduct business in the State of Illinois, and that these Defendants' actions described
28   herein occurred in the State of Illinois.

                                           -42-

171.   This is a qui tam action brought by Relator and the State of Illinois to recover treble damages and civil penalties under the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175 *et seq.*

740 ILCS 175/3(a) provides liability for any person who—

knowingly presents, or causes to be presented, to an officer or employee of the State of a member of the Guard a false or fraudulent claim for payment or approval;

knowingly makes, uses, of causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

Conspires to defraud the State by getting a false or fraudulent claim allowed or paid.

172.   Defendants violated 740 ILCS 175/3(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Illinois from at least 1999 to the present by its violation of federal and state laws, as described herein.

173.   The State of Illinois, by and through the Illinois Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

174.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein with an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Illinois in connection with Defendants' fraudulent and illegal practices.

175.   Had the State of Illinois known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

176.   As a result of Defendants' violations of 740 ILCS 175/3(a), the State of Illinois has been damaged in an amount far in excess of millions of dollars exclusive of interest.

177.   Relator Phillips is a private person with direct and independent knowledge of the allegation of this Complaint, who have brought this action pursuant to 740 ILCS 175/3(b) on behalf of himself and the State of Illinois.

178.    This court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Illinois in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF ILLINOIS:

Three times the amount of actual damages which the State of Illinois has sustained as a result of Defendants' fraudulent and illegal practices;

A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of Illinois;

Prejudgment interest; and

All costs incurred in bringing this action.

To RELATOR:

The maximum amount allowed pursuant to 740 ILCS/4(d) and/or any other applicable provision of law;

Reimbursement for reasonable expenses which Relator incurred in connection with this action;

An award of reasonable attorneys' fees and costs; and

Such further relief as this Court deems equitable and just.

### COUNT ELEVEN
### VIOLATION OF THE INDIANA FALSE CLAIMS AND WHISTLEBLOWER PROTECTION ACT
### (AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC, T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)

179.    Relator re-alleges and incorporates each of the allegations of this Complaint as if fully set forth herein.

180.    Additionally, Relator states on information and belief that the course of conduct described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., that these Defendants conduct business in the State of Indiana, and that these Defendants' actions described herein occurred in the State of Indiana.

-44-

181.   This is a qui tam action brought by Relator and the State of Indiana to recover treble damages and civil penalties under the Indiana False Claims and Whistleblower Protection Act, IC 5-11-5.5 *et seq.*

IC 5-11-5.5-2 provides liability for any person who—

(1) presents a false claim to the state for payment or approval;

(2) makes or uses a false record or statement to obtain payment or approval of a false claim from the state;

(3) with intent to defraud the state, delivers less money or property to the state than the amount recorded on the certificate or receipt the person receives from the state;

(4) with intent to defraud the state, authorizes issuance of a receipt without knowing that the information on the receipt is true;

(5) receives public property as a pledge of an obligation on a debt from an employee who is not lawfully authorized to sell or pledge the property;

(6) makes or uses a false record or statement to avoid an obligation to pay or transmit property to the state;

(7) conspires with another person to perform an act described in subdivisions (1) through (6); or

(8) causes or induces another person to perform an act described in subdivisions (1) through (6).

182.   Defendants violated IC 5-11-5.5-2 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Indiana from at least 1999 to the present by its violation of federal and state laws, as described herein.

183.   The State of Indiana, by and through the Indiana Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

184.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein with an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Indiana in connection with Defendants' fraudulent and illegal practices.

185.   Had the State of Indiana known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and

-45-

third party payers in connection with Defendants' fraudulent and illegal practices.

186. As a result of Defendants' violations of IC 5-11-5.5-2, the State of Indiana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

187. Relator Phillips is a private person with direct and independent knowledge of the allegation of this Complaint, who have brought this action pursuant to IC 5-11-5.5-4 on behalf of himself and the State of Indiana.

188. This court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Indiana in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF INDIANA:

Three times the amount of actual damages which the State of Indiana has sustained as a result of Defendants' fraudulent and illegal practices;

Prejudgment interest; and

All costs incurred in bringing this action.

To RELATOR:

The maximum amount allowed pursuant to IC 5-11-5.5-6 and/or any other applicable provision of law;

Reimbursement for reasonable expenses which Relator incurred in connection with this action;

An award of reasonable attorneys' fees and costs; and

Such further relief as this Court deems equitable and just.

## COUNT TWELVE
### VIOLATION OF THE LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW
### (AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC, T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)

189. Relator re-alleges and incorporates each of the allegations of this Complaint as if fully set forth herein.

190. Additionally, Relator states on information and belief that the course of conduct

Complaint for Damages Under the Federal False Claims Act

1  described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team

2  Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., that these

3  Defendants conduct business in the State of Louisiana, and that these Defendants' actions

4  described herein occurred in the State of Louisiana.

5      191.    This is a qui tam action brought by Relator and the State of Louisiana to recover

6  treble damages and civil penalties under the Louisiana Medical Assistance Programs Integrity

7  Law, La Rev. Stat. Ann § 437.1 et seq.

8      La. Rev. Stat. Ann. § 438.3 provides –

9
        No person shall knowingly present or cause to be presented a false or fraudulent
10      claim;

11      No person shall knowingly engage in misrepresentation to obtain, or attempt to
        obtain, payment from medial assistance programs funds;
12
        No person shall conspire to defraud, or attempt to defraud, the medical assistance
13      programs through misrepresentation or by obtaining, or attempting to obtain,
        payment for a false or fraudulent claim;
14

15      192.    Defendants violated La. Rev. Stat. Ann. § 438.3 and knowingly caused hundreds

16  of thousands of false claims to be made, used and presented to the State of Louisiana from at least

17  1999 to the present by its violation of federal and state laws, as described herein.

18      193.    The State of Louisiana, by and through the Louisiana Medicaid program and other

19  state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the

20  claims submitted by health care providers and third party payers in connection therewith.

21      194.    Compliance with applicable Medicare, Medicaid and the various other federal and

22  state laws cited herein was an implied, and upon information and belief, also an express condition

23  of payment of claims submitted to the State of Louisiana in connection with Defendants'

24  fraudulent and illegal practices.

25      195.    Had the State of Louisiana known that Defendants were violating the federal and

26  state laws cited herein, it would not have paid the claims submitted by health care providers and

27  third party payers in connection with Defendants' fraudulent and illegal practices.

28      196.    As a result of Defendants' violations of La. Rev. Stat. Ann. § 438.3 the State of

Louisiana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

197.    Relator Phillips is a private person with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to La. Rev. Stat. Ann. § 439.1(A) on behalf of himself and the State of Louisiana.

198.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Louisiana in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF LOUISIANA:

Three times the amount of actual damages which the State of Louisiana has sustained as a result of Defendants' fraudulent and illegal practices;

A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of Louisiana;

Prejudgment interest; and

All costs incurred in bringing this action.

To RELATOR:

The maximum amount allowed pursuant to La. Rev. Stat. § 439.4(A) and/or any other applicable provision of law;

Reimbursement for reasonable expenses which Relator incurred in connection with this action;

An award or reasonable attorneys' fees and costs; and

Such further relief as this Court deems equitable and just.

### COUNT THIRTEEN
### VIOLATION OF THE MASSACHUSETTS FALSE CLAIMS ACT
### (AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC, T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)

199.    Relator re-alleges and incorporates each of the allegations of this Complaint as if fully set forth herein.

200.    Additionally, Relator states on information and belief that the course of conduct

-48-

1 described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team

2 Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., that these

3 Defendants conduct business in the State of Massachusetts, and that these Defendants' actions

4 described herein occurred in the State of Massachusetts.

5 201. This is a qui tam action brought by Relator and State of Massachusetts for treble

6 damages and penalties under Massachusetts False Claims Act, Mass. Gen. Laws Ann. Chap 12 §

7 5(A) et seq.

8 Mass. Gen. Laws Ann. Chap 12 § 5B provides liability for any person who—

9 Knowingly presents, or causes to be presented, a false or fraudulent claim for
10 payment or approval;

11 Knowingly makes, uses, or causes to be made or used, a false record or statement
to obtain payment or approval of a claim by the commonwealth or any political
12 subdivision thereof;

13 Conspires to defraud the commonwealth or any political subdivision thereof
through the allowance or payment of a fraudulent claim;

14 Is a beneficiary of an inadvertent submission of a false claim to the common
wealth or political subdivision thereof, subsequently discovers the falsity of the
15 claim, and fails to disclose the false claim to the commonwealth or political
subdivision within a reason able time after discovery of the false claim.
16

17 202. Defendants violated Mass. Gen. Laws Ann. Chap 12 § 5B and knowingly caused

18 hundreds of thousands of false claims to be made, used and presented to the State of

19 Massachusetts from at least 1999 to the present by its violation of federal and state laws, as

20 described herein.

21 203. The State of Massachusetts, by and through the Massachusetts Medicaid program

22 and other state health care programs, and unaware of Defendants' fraudulent and illegal practices,

23 paid the claims submitted by health care providers and third party payers in connection therewith.

24 204. Compliance with applicable Medicare, Medicaid and the various other federal and

25 state laws cited herein was an implied, and upon information and belief, also an express condition

26 of payment of claims submitted to the State of Massachusetts in connection with Defendants'

27 fraudulent and illegal practices.

28 205. Had the State of Massachusetts known that Defendants were violating the federal

1  and state laws cited herein, it would not have paid the claims submitted by health care providers

2  and third party payers in connection with Defendants' fraudulent and illegal practices.

3      206.    As a result of Defendants' violatons of Mass. Gen. Laws Ann. Chap. 12 § 5B the

4  State of Massachusetts has been damaged in an amount far in excess of millions of dollars

5  exclusive of interest.

6      207.    Relator Phillips is a private person with direct and independent knowledge of the

7  allegations of the Compliant, who have brought this action pursuant to Mass. Gen. Laws Ann

8  Chap. 12 § 5(c(2) on behalf of himself and the State of Massachusetts.

9      208.    This Court is requested to accept supplemental jurisdiction of this related state

10  claim as it is predicated upon that exact same facts as the federal claim, and merely asserts

11  separate damage to the State of Massachusetts in the operation of its Medicaid program.

12      WHEREFORE, Relator respectfully requests this Court to award the following damages

13  to the following parties and against Defendants:

14      To the STATE OF MASSACHUSETTS:

15      Three times the amount of actual damages which that State of Massachusetts has sustained
        as a result of Defendants' fraudulent and illegal practices;
16
17      A civil penalty of not less than $5,000 and not more than $10,000 for each false claim
        which Defendants caused to be presented to the State of Massachusetts;

18      Prejudgment interest; and

19      All costs incurred in bringing this action.

20      To RELATOR:

21      The maximum amount allowed pursuant to Mass. Gen. Laws Ann. Chap. 12 § 5F and/or
        any other applicable provision of law;
22
23      Reimbursement for reasonable expenses which Relator incurred in connection with this
        action;

24      An award of reasonable attorneys' fees and costs; and

25      Such further relief as this Court deems equitable and just.

26

27  ///

28  ///

-50-
Complaint for Damages Under the Federal False Claims Act

## COUNT FOURTEEN
### VIOLATION OF THE MICHIGAN MEDICAID FALSE CLAIM ACT
### (AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC, T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)

209. Relator re-alleges and incorporates each of the allegations of this Complaint as if fully set forth herein.

210. Additionally, Relator states on information and belief that the course of conduct described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., that these Defendants conduct business in the State of Michigan, and that these Defendants' actions described herein occurred in the State of Michigan.

211. This is a qui tam action brought by Relator and State of Michigan for treble damages and penalties under Michigan Medicaid False Claim Act, M.C.L.A. 400.601 *et seq.*

M.C.L.A. 400.607 provides liability for any person who, among other things—

Causes to be made or presented to an employee or officer of this state a claim under the social welfare act, Act No. 280 of the Public Acts of 1939, as amended, being sections 400.1 to 400.121 of the Michigan Compiled Laws, upon or against the state, knowing the claim to be false.

Presents or causes to be made or presented a claim under the social welfare act, Act No. 280 of the Public Acts of 1939, which he or she knows falsely represents that the goods or services for which the claim is made were medically necessary in accordance with professionally accepted standards.

212. In addition, M.C.L.A. 400.604 prohibits the solicitation, receipt or offering of a kickback or bribe in connection with the furnishing of goods or services for which payment is or may be made in whole or in part pursuant to the Michigan Medicaid program.

213. Defendants violated M.C.L.A. 400.604 from at least 1999 to the present by engaging in the fraudulent and illegal practices described herein.

214. Defendants furthermore violated M.C.L.A. 400.607 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Michigan from at least 1999 to the present by its violation of federal and state laws, as described herein.

215. The State of Michigan, by and through the Michigan Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the

-51-

claims submitted by health care providers and third party payers in connection therewith.

216. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Michigan in connection with Defendants' fraudulent and illegal practices.

217. Had the State of Michigan known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

218. As a result of Defendants' violations of M.C.L.A. 400.607 the State of Michigan has been damaged in an amount far in excess of millions of dollars exclusive of interest.

219. Relator Phillips is a private person with direct and independent knowledge of the allegations of the Compliant, who have brought this action pursuant to M.C.L.A. 400.610a on behalf of himself and the State of Michigan.

220. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon that exact same facts as the federal claim, and merely asserts separate damage to the State of Michigan in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF MICHIGAN:

All damages to which the State of Michigan is entitled pursuant to M.C.L.A. 400.612;

Civil penalties for each false claim which Defendants caused to be presented to the State of Michigan;

Prejudgment interest; and

All costs incurred in bringing this action.

To RELATOR:

The maximum amount allowed pursuant to M.C.L.A. 400.610a(9) and/or any other applicable provision of law;

Reimbursement for reasonable expenses which Relator incurred in connection with this action;

1  An award of reasonable attorneys' fees and costs; and

2  Such further relief as this Court deems equitable and just.

### COUNT FIFTEEN
### VIOLATION OF THE MONTANA FALSE CLAIMS ACT
### (AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC, T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)

221.  Relator re-alleges and incorporates each of the allegations of this Complaint as if fully set forth herein.

222.  Additionally, Relator states on information and belief that the course of conduct described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., that these Defendants conduct business in the State of Montana, and that these Defendants' actions described herein occurred in the State of Montana.

*223.*  This is a qui tam action brought by Relator and State of Montana for treble damages and penalties under Montana False Claims Act, MT ST 17-8-401 *et seq.*

MT ST 17-8-403  provides liability for any person who—

knowingly presenting or causing to be presented to an officer or employee of the governmental entity a false claim for payment or approval;

knowingly making, using, or causing to be made or used a false record or statement to get a false claim paid or approved by the governmental entity;

conspiring to defraud the governmental entity by getting a false claim allowed or paid by the governmental entity.

224.  In addition, MT ST 45-6-313 prohibits the solicitation, receipt or offering any remuneration, including but not limited to a kickback, bribe, or rebate, other than an amount legally payable under the medical assistance program, for furnishing services or items for which payment may be made under the Montana Medicaid program.

225.  Defendants violated MT ST 45-6-313 from at least 1999 to the present by engaging in the fraudulent and illegal practices described herein.

226.  Defendants furthermore violated MT ST 17-8-403 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Montana from at least

-53-

1  1999 to the present by its violation of federal and state laws, as described herein.

2      227.  The State of Montana, by and through the Montana Medicaid program and other

3  state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the

4  claims submitted by health care providers and third party payers in connection therewith.

5      228.  Compliance with applicable Medicare, Medicaid and the various other federal and

6  state laws cited herein was an implied, and upon information and belief, also an express condition

7  of payment of claims submitted to the State of Montana in connection with Defendants'

8  fraudulent and illegal practices.

9      229.  Had the State of Montana known that Defendants were violating the federal and

10 state laws cited herein, it would not have paid the claims submitted by health care providers and

11 third party payers in connection with Defendants' fraudulent and illegal practices.

12     230.  As a result of Defendants' violations of MT ST 17-8-403 the State of Montana has

13 been damaged in an amount far in excess of millions of dollars exclusive of interest.

14     231.  Relator Phillips is a private person with direct and independent knowledge of the

15 allegations of the Compliant, who have brought this action pursuant to MT ST 17-8-406 on behalf

16 of himself and the State of Montana.

17     232.  This Court is requested to accept supplemental jurisdiction of this related state

18 claim as it is predicated upon that exact same facts as the federal claim, and merely asserts

19 separate damage to the State of Montana in the operation of its Medicaid program.

20     WHEREFORE, Relator respectfully requests this Court to award the following damages

21 to the following parties and against Defendants:

22     To the STATE OF MONTANA:

23     Three times the amount of actual damages which that State of Montana has sustained as a
       result of Defendants' fraudulent and illegal practices;
24

25     A civil penalty of $10,000 for each false claim which Defendants caused to be presented
       to the State of Montana;

26     Prejudgment interest; and

27     All costs incurred in bringing this action.

28     To RELATOR:

Complaint for Damages Under the Federal False Claims Act

The maximum amount allowed pursuant to MT ST 17-8-410 and/or any other applicable provision of law;

Reimbursement for reasonable expenses which Relator incurred in connection with this action;

An award of reasonable attorneys' fees and costs; and

Such further relief as this Court deems equitable and just.

## COUNT SIXTEEN
### VIOLATION OF THE NEVADA FALSE CLAIMS ACT
### (AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC, T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)

233. Relator re-alleges and incorporates each of the allegations of this Complaint as if fully set forth herein.

234. Additionally, Relator states on information and belief that the course of conduct described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., that these Defendants conduct business in the State of Nevada, and that these Defendants' actions described herein occurred in the State of Nevada.

235. This is a qui tam action brought by Relator and the State of Nevada to recover treble damages and civil penalties under the Nevada False Claims Act, N.R.S. § 357.010 et. seq.

N.R.S. § 357.040(1) provides liability for any person who—

Knowingly presents or causes to be presented a false claim for payment or approval;

Knowingly makes or uses, or causes to be made or used, a false record or statement to obtain payment or approval of a false claim;

Conspires to defraud by obtaining allowance or payment of a false claim;

Is a beneficiary of an inadvertent submission of a false claim and, after discovering the falsity of the claim, fails to disclose the falsity to the state or political subdivision within a reasonable time.

236. In addition, N.R.S. § 422.560 prohibits the solicitation, acceptance or receipt of anything of value in connection with the provision of medical goods or services for which payment may be made in whole or in part under the Nevada Medicaid program.

237. Defendants violated N.R.S. § 422.560 from at least 1999 to the present by engaging in the fraudulent and illegal practices described herein.

238. Defendants furthermore violated N.R.S. § 357.040(1) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Nevada from at least 1999 to the present by its violation of federal and state laws, as described herein.

239. The State of Nevada, by and through the Nevada Medicaid program and other health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

240. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of clams submitted to the State of Nevada in connection with Defendants' fraudulent and illegal practices.

241. Had the State of Nevada known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

242. As a result of Defendants' violations of N.R.S. § 357.040(1) the State of Nevada has been damaged in an amount far in excess or millions of dollars exclusive of interest.

243. Relator Phillips is a private person with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to N.R.S. § 357.080(1) on behalf of himself and the State of Nevada.

244. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicted upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Nevada in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF NEVADA:

Three times the amount of actual damages which the State of Nevada has sustained as a result of Defendants' fraudulent and illegal practices;

Complaint for Damages Under the Federal False Claims Act

A civil penalty of not less than $2,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of Nevada;

Prejudgment interest; and

All costs incurred in bringing this action.

To RELATOR:

The maximum amount allowed pursuant to N.R.S § 357.210 and/or any other applicable provision of law;

Reimbursement for reasonable expenses which Relator incurred in connection with this action;

An award of reasonable attorneys' fees and costs; and

Such further relief as this Court deems equitable and just.

**COUNT SEVENTEEN**
**VIOLATION OF THE NEW HAMPSHIRE FALSE CLAIMS ACT**
**(AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC, T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)**

245.     Relator re-alleges and incorporates each of the allegations of this Complaint as if fully set forth herein.

246.     Additionally, Relator states on information and belief that the course of conduct described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., that these Defendants conduct business in the State of New Hampshire, and that these Defendants' actions described herein occurred in the State of New Hampshire.

247.     This is a qui tam action brought by Relator and State of New Hampshire for treble damages and penalties under New Hampshire False Claims Act, N.H. Rev. Stat. § 167:61-b *et seq.*

N.H. Rev. Stat. § 167:61-b provides liability for any person who—

Knowingly presents, or causes to be presented, to an officer or employee of the department, a false or fraudulent claim for payment or approval.

Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the department.

Conspires to defraud the department by getting a false or fraudulent claim allowed or paid.

Complaint for Damages Under the Federal False Claims Act

248. Defendants violated N.H. Rev. Stat. § 167:61-b and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of New Hampshire from at least 1999 to the present by its violation of federal and state laws, as described herein.

249. The State of New Hampshire, by and through the New Hampshire Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

250. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New Hampshire in connection with Defendants' fraudulent and illegal practices.

251. Had the State of New Hampshire known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

252. As a result of Defendants' violations of N.H. Rev. Stat. § 167:61-b the State of New Hampshire has been damaged in an amount far in excess of millions of dollars exclusive of interest.

253. Relator Phillips is a private person with direct and independent knowledge of the allegations of the Compliant, who have brought this action pursuant to N.H. Rev. Stat. § 167:61-c on behalf of himself and the State of New Hampshire.

254. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon that exact same facts as the federal claim, and merely asserts separate damage to the State of New Hampshire in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF NEW HAMPSHIRE:

> Three times the amount of actual damages which that State of New Hampshire has sustained as a result of Defendants' fraudulent and illegal practices;

A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of New Hampshire;

Prejudgment interest; and

All costs incurred in bringing this action.

To RELATOR:

The maximum amount allowed pursuant to N.H. Rev. Stat. § 167:61-e and/or any other applicable provision of law;

Reimbursement for reasonable expenses which Relator incurred in connection with this action;

An award of reasonable attorneys' fees and costs; and

Such further relief as this Court deems equitable and just.

## COUNT EIGHTEEN
## VIOLATION OF THE NEW JERSEY FALSE CLAIMS ACT
## (AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC, T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)

255.    Relator re-alleges and incorporates each of the allegations of this Complaint as if fully set forth herein.

256.    Additionally, Relator states on information and belief that the course of conduct described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., that these Defendants conduct business in the State of New Jersey, and that these Defendants' actions described herein occurred in the State of New Jersey.

257.    This is a qui tam action brought by Relator and State of New Jersey for treble damages and penalties under New Jersey False Claims Act, N.J.S.A. 2A:32C-1 et seq.

N.J.S.A. 2A:32C-3 provides liability for any person who—

Knowingly presents or causes to be presented to an employee, officer or agent of the State, or to any contractor, grantee, or other recipient of State funds, a false or fraudulent claim for payment or approval;

Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the State;

Conspires to defraud the State by getting a false or fraudulent claim allowed or paid by the State.

258.    Defendants violated N.J.S.A. 2A:32C-3 and knowingly caused hundreds of

1    thousands of false claims to be made, used and presented to the State of Nevada from at least

2    1999 to the present by its violation of federal and state laws, as described herein.

3        259.    The State of New Jersey, by and through the New Jersey Medicaid program and

4    other state health care programs, and unaware of Defendants' fraudulent and illegal practices,

5    paid the claims submitted by health care providers and third party payers in connection therewith.

6        260.    Compliance with applicable Medicare, Medicaid and the various other federal and

7    state laws cited herein was an implied, and upon information and belief, also an express condition

8    of payment of claims submitted to the State of New Jersey in connection with Defendants'

9    fraudulent and illegal practices.

10       261.    Had the State of New Jersey known that Defendants were violating the federal and

11   state laws cited herein, it would not have paid the claims submitted by health care providers and

12   third party payers in connection with Defendants' fraudulent and illegal practices.

13       262.    As a result of Defendants' violations of N.J.S.A. 2A:32C-3 the State of New

14   Jersey has been damaged in an amount far in excess of millions of dollars exclusive of interest.

15       263.    Relator Phillips is a private person with direct and independent knowledge of the

16   allegations of the Compliant, who have brought this action pursuant to N.J.S.A. 2A:32C-5 on

17   behalf of himself and the State of New Jersey.

18       264.    This Court is requested to accept supplemental jurisdiction of this related state

19   claim as it is predicated upon that exact same facts as the federal claim, and merely asserts

20   separate damage to the State of New Jersey in the operation of its Medicaid program.

21       WHEREFORE, Relator respectfully requests this Court to award the following damages

22   to the following parties and against Defendants:

23   To the STATE OF NEW JERSEY:

24       Three times the amount of actual damages which that State of New Jersey has sustained as
         a result of Defendants' fraudulent and illegal practices;
25
         A civil penalty of not less than $5,000 and not more than $10,000 for each false claim
26       which Defendants caused to be presented to the State of New Jersey;

27       Prejudgment interest; and

28       All costs incurred in bringing this action.

To RELATOR:

The maximum amount allowed pursuant to N.J.S.A. 2A:32C-7and/or any other applicable provision of law;

Reimbursement for reasonable expenses which Relator incurred in connection with this action;

An award of reasonable attorneys' fees and costs; and

Such further relief as this Court deems equitable and just.

## COUNT NINETEEN
### VIOLATION OF THE NEW MEXICO MEDICAID FALSE CLAIMS ACT AND THE FRAUD AGAINST TAXPAYERS ACT
### (AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC, T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC., VALLEY EMERGENCY PHYSICIANS GROUP, INC.)

265. Relator re-alleges and incorporates each of the allegations of this Complaint as if fully set forth herein.

266. Additionally, Relator states on information and belief that the course of conduct described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team Health Holdings, LLC, T-System, Inc., Valley Emergency Physicians Medical Group, Inc. and Marina Medical Billing Services, Inc., that these Defendants conduct business in the State of New Mexico, and that these Defendants' actions described herein occurred in the State of New Mexico.

267. This is a qui tam action brought by Relator and the State of New Mexico to recover treble damages and civil penalties under the New Mexico Medicaid False Claims Act, N. M. S. A. 1978, § 27-14-1 *et seq.* and the New Mexico Fraud Against Taxpayers Act, N. M. S. A. 1978, § 44-9-1 *et seq.*

N. M. S. A. 1978, § 27-14-4 provides liability for any person who-

Presents, or causes to be presented, to the state a claim for payment under the Medicaid program knowing that the person receiving a Medicaid benefit or payment is not authorized or is not eligible for a benefit under the Medicaid program

Makes, uses or causes to be made or used a record or statement to obtain a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false

-61-
Complaint for Damages Under the Federal False Claims Act

1

2    Conspires to defraud the state by getting a claim allowed or paid under the Medicaid program knowing that such claim is false or fraudulent

3
     N.M.S.A. 1978 § 44-9-3 provides liability for any person who-
4

5    knowingly presents, or causes to be presented, to an employee, officer or agent of the state or to a contractor, grantee or other recipient of state funds a false or fraudulent claim for payment or approval;

6
     knowingly makes or uses, or causes to be made or used, a false, misleading or fraudulent record or statement to obtain or support the approval of or the payment on a false or fraudulent claim;

7

8    conspires to defraud the state by obtaining approval or payment on a false or fraudulent claim;

9

10   conspires to make, use or cause to be made or used, a false, misleading or fraudulent record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state.

11

12   268.   Defendants violated N. M. S. A. 1978, § 27-14-4 and N.M.S.A. 1978 § 44-9-3

13   from at least 1999 to the present by engaging in the fraudulent and illegal practices described

14   herein.

15   269.   Defendants furthermore violated N. M. S. A. 1978, § 27-14-4 and N.M.S.A. 1978

16   § 44-9-3 and knowingly caused thousands of false claims to be made, used and presented to the

17   State of New Mexico from at least 1999 to the present by its violation of federal and state laws, as

18   described herein.

19   270.   The State of New Mexico, by and through the State of New Mexico Medicaid

20   program and other state health care programs, and unaware of Defendants' fraudulent and illegal

21   practices, paid the claims submitted by health care providers and third payers in connection

22   therewith.

23   271.   Compliance with applicable Medicare, Medicaid and the various other federal and

24   state laws cited herein was an implied, and upon information and belief, also an express condition

25   of payment of claims submitted to the State of New Mexico in connection with Defendants'

26   fraudulent and illegal practices.

27   272.   Had the State of New Mexico known that Defendants were violating the federal

28   and state laws cited herein, it would not have paid the claims submitted by health care providers

Complaint for Damages Under the Federal False Claims Act

1   and third party payers in connection with Defendants' fraudulent and illegal practices.

2       273.    As a result of Defendants' violations of N. M. S. A. 1978, § 27-14-4 and N.M.S.A.

3   1978 § 44-9-3 the State of New Mexico has been damaged in an amount far in excess of millions

4   of dollars exclusive of interest.

5       274.    Relator Phillips is a private person with direct and independent knowledge of the

6   allegations of this Complaint, who have brought this action pursuant to N. M. S. A. 1978, § 27-

7   14-7 and N. M. S. A. 1978, § 44-9-5 on behalf of himself and the State of New Mexico.

8       275.    This Court is requested to accept supplemental jurisdiction of this related state

9   claim as it is predicated upon the exact same facts as the federal claim, and merely asserts

10  separate damage to the State of New Mexico in the operation of its Medicaid program.

11      WHEREFORE, Relator respectfully requests this Court to award the following damages

12  to the following parties and against Defendants:

13      To the STATE OF NEW MEXICO:

14          Three times the amount of actual damages which the State of New Mexico has sustained
            as a result of Defendants' fraudulent and illegal practices;
15

16          A civil penalty of not less than $5,000 and not more than $10,000 for each false claim
            which Defendants caused to be presented to the State of New Mexico;

17          Prejudgment interest; and

18          All costs incurred in bringing this action.

19      To RELATOR:

20          The maximum amount allowed pursuant to N. M. S. A. 1978, § 27-14-9 and N. M. S. A.
            1978, § 44-9-7 and /or any other applicable provision of law;
21

22          Reimbursement for reasonable expenses which Relator incurred in connection with this
            action;

23          An award of reasonable attorneys' fees and costs; and

24          Such further relief as this court deems equitable and just.

25                              **COUNT TWENTY**
                    **VIOLATION OF THE NEW YORK FALSE CLAIMS ACT**
26      **(AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC,**
                **T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)**
27

28      276.    Relator re-alleges and incorporates each of the allegations of this Complaint as if

                                        -63-

1  fully set forth herein.

2      277.    Additionally, Relator states on information and belief that the course of conduct

3  described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team

4  Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., that these

5  Defendants conduct business in the State of New York, and that these Defendants' actions

6  described herein occurred in the State of New York.

7      278.    This is a qui tam action brought by Relator and State of New York for treble

8  damages and penalties under New York False Claims Act, McKinney's State Finance Law § 187

9  *et seq.*

10      McKinney's State Finance Law § 189 provides liability for any person who—

11      Knowingly presents, or causes to be presented, to any employee, officer or agent of
        the state or a local government, a false or fraudulent claim for payment or approval;

12      Knowingly makes, uses, or causes to be made or used, a false record or statement to

13      get a false or fraudulent claim paid or approved by the state or a local government;

14      Conspires to defraud the state or a local government by getting a false or fraudulent
        claim allowed or paid.

15

16      279.    Defendants violated § 189 from at least 1999 to the present by engaging in the

17  fraudulent and illegal practices described herein.

18      280.    Defendants furthermore violated § 189 and knowingly caused hundreds of

19  thousands of false claims to be made, used and presented to the State of New York from at least

20  1999 to the present by its violation of federal and state laws, as described herein.

21      281.    The State of New York, by and through the New York Medicaid program and

22  other state health care programs, and unaware of Defendants' fraudulent and illegal practices,

23  paid the claims submitted by health care providers and third party payers in connection therewith.

24      282.    Compliance with applicable Medicare, Medicaid and the various other federal and

25  state laws cited herein was an implied, and upon information and belief, also an express condition

26  of payment of claims submitted to the State of New York in connection with Defendants'

27  fraudulent and illegal practices.

28      283.    Had the State of New York known that Defendants were violating the federal and

1 | state laws cited herein, it would not have paid the claims submitted by health care providers and

2 | third party payers in connection with Defendants' fraudulent and illegal practices.

3 | 284. As a result of Defendants' violations of § 189 the State of New York has been

4 | damaged in an amount far in excess of millions of dollars exclusive of interest.

5 | 285. Relator Phillips is a private person with direct and independent knowledge of the

6 | allegations of the Compliant, who have brought this action pursuant to McKinney's State Finance

7 | Law § 190(2) on behalf of himself and the State of New York.

8 | 286. This Court is requested to accept supplemental jurisdiction of this related state

9 | claim as it is predicated upon that exact same facts as the federal claim, and merely asserts

10 | separate damage to the State of New York in the operation of its Medicaid program.

11 | WHEREFORE, Relator respectfully requests this Court to award the following damages

12 | to the following parties and against Defendants:

13 | To the STATE OF NEW YORK:

14 | Three times the amount of actual damages which that State of New York has sustained as
   | a result of Defendants' fraudulent and illegal practices;

15 |

16 | A civil penalty of not less than $5,000 and not more than $10,000 for each false claim
   | which Defendants caused to be presented to the State of New York;

17 | Prejudgment interest; and

18 | All costs incurred in bringing this action.

19 | To RELATOR:

20 | The maximum amount allowed pursuant to McKinney's State Finance Law § 190(6)
   | and/or any other applicable provision of law;

21 |

22 | Reimbursement for reasonable expenses which Relator incurred in connection with this
   | action;

23 | An award of reasonable attorneys' fees and costs; and

24 | Such further relief as this Court deems equitable and just.

25 | **COUNT TWENTY-ONE**

26 | **VIOLATION OF THE OKLAHOMA MEDICAID FALSE CLAIMS ACT**
   | **(AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC,**

27 | **T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)**

28 | 287. Relator re-alleges and incorporates each of the allegations of this Complaint as if

-65-

1  fully set forth herein.

2  288.  Additionally, Relator states on information and belief that the course of conduct

3  described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team

4  Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., that these

5  Defendants conduct business in the State of Oklahoma, and that these Defendants' actions

6  described herein occurred in the State of Oklahoma.

7  289.  This is a qui tam action brought by Relator and the State of Oklahoma to recover

8  treble damages and civil penalties under the Oklahoma Medicaid False Claims Act, 63 Okl. St.

9  Ann. § 5053 *et seq.*

10  63 Okl. St. Ann. § 5053.1 provides liability for any person who-

11  Knowingly presents, or causes to be presented, to an officer or employee of the State of Oklahoma, a false or fraudulent claim for payment or approval;

12

13  Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

14  Conspires to defraud the state by getting a false or fraudulent claim allowed or paid;

15

16  290.  Defendants violated 63 Okl. St. Ann. § 5053.1 and knowingly caused thousands of

17  false claims to be made, used and presented to the State of Oklahoma from at least 1999 to the

18  present by its violation of federal and state laws. as described herein.

19  291.  The State of Oklahoma, by and through the State of Oklahoma Medicaid program

20  and other state health care programs, and unaware of Defendants' fraudulent and illegal practices,

21  paid the claims submitted by health care providers and third payers in connection therewith.

22  292.  Compliance with applicable Medicare, Medicaid and the various other federal and

23  state laws cited herein was an implied, and upon information and belief, also an express condition

24  of payment of claims submitted to the State of Oklahoma in connection with Defendants'

25  fraudulent and illegal practices.

26  293.  Had the State of Oklahoma known that Defendants were violating the federal and

27  state laws cited herein, it would not have paid the claims submitted by health care providers and

28  third party payers in connection with Defendants' fraudulent and illegal practices.

1    294.    As a result of Defendants' violations of 63 Okl. St. Ann. § 5053.1 the State of

2    Oklahoma has been damaged in an amount far in excess of millions of dollars exclusive of

3    interest.

4    295.    Relator Phillips is a private person with direct and independent knowledge of the

5    allegations of this Complaint, who have brought this action pursuant to 63 Okl. St. Ann. §

6    5053.2(B) on behalf of himself and the State of Oklahoma.

7    296.    This Court is requested to accept supplemental jurisdiction of this related state

8    claim as it is predicated upon the exact same facts as the federal claim, and merely asserts

9    separate damage to the State of Oklahoma in the operation of its Medicaid program.

10    WHEREFORE, Relator respectfully requests this Court to award the following damages

11    to the following parties and against Defendants:

12    To the STATE OF OKLAHOMA:

13    Three times the amount of actual damages which the State of Oklahoma has sustained as a
      result of Defendants' fraudulent and illegal practices;
14

15    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim
      which Defendants caused to be presented to the State of Oklahoma;

16    Prejudgment interest; and

17    All costs incurred in bringing this action.

18    To RELATOR:

19    The maximum amount allowed pursuant 63 Okl. St. Ann. § 5053.4 and /or any other
      applicable provision of law;
20

21    Reimbursement for reasonable expenses which Relator incurred in connection with this
      action;

22    An award of reasonable attorneys' fees and costs; and

23    Such further relief as this court deems equitable and just.

24                                **COUNT TWENTY-TWO**
25            **VIOLATION OF THE RHODE ISLAND FALSE CLAIMS ACT**
      **(AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC,**
26          **T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)**

27    297.    Relator re-alleges and incorporates each of the allegations of this Complaint as if

28    fully set forth herein.

298. Additionally, Relator states on information and belief that the course of conduct described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., that these Defendants conduct business in the State of Rhode Island, and that these Defendants' actions described herein occurred in the State of Rhode Island.

299. This is a qui tam action brought by Relator and the State of Rhode Island to recover treble damages and civil penalties under the Rhode Island False Claims Act, Gen. Laws 1956, § 9-1.1-1 *et seq.*

Gen. Laws 1956, § 9-1.1-3 provides liability for any person who-

knowingly presents, or causes to be presented, to an officer or employee of the state or a member of the guard a false or fraudulent claim for payment or approval;

knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

conspires to defraud the state by getting a false or fraudulent claim allowed or paid.

300. Defendants violated Gen. Laws 1956, § 9-1.1-3 and knowingly caused thousands of false claims to be made, used and presented to the State of Rhode Island from at least 1999 to the present by its violation of federal and state laws, as described herein.

301. The State of Rhode Island, by and through the State of Rhode Island Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

302. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Rhode Island in connection with Defendants' fraudulent and illegal practices.

303. Had the State of Rhode Island known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

304. As a result of Defendants' violations of Gen. Laws 1956, § 9-1.1-3 the State of Rhode Island has been damaged in an amount far in excess of millions of dollars exclusive of interest.

305. Relator Phillips is a private person with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Gen. Laws 1956, § 9-1.1-4(b) on behalf of himself and the State of Rhode Island.

306. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Rhode Island in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF RHODE ISLAND:

Three times the amount of actual damages which the State of Rhode Island has sustained as a result of Defendants' fraudulent and illegal practices;

A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of Rhode Island;

Prejudgment interest; and

All costs incurred in bringing this action.

To RELATOR:

The maximum amount allowed pursuant Gen. Laws 1956, § 9-1.1-4(d) and /or any other applicable provision of law;

Reimbursement for reasonable expenses which Relator incurred in connection with this action;

An award of reasonable attorneys' fees and costs; and Such further relief as this court deems equitable and just.

## COUNT TWENTY-THREE
### VIOLATION OF THE TENNESSEE FALSE CLAIMS ACT
### (AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC, T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC., VALLEY EMERGENCY PHYSICIANS GROUP, INC.)

307. Relator re-alleges and incorporates each of the allegations of this Complaint as if

fully set forth herein.

308. Additionally, Relator states on information and belief that the course of conduct described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team Health Holdings, LLC, T-System, Inc., Valley Emergency Physicians Medical Group, Inc., and Marina Medical Billing Services, Inc., that these Defendants conduct business in the State of Tennessee, and that these Defendants' actions described herein occurred in the State of Tennessee.

309. This is a qui tam action brought by Relator and the State of Tennessee to recover treble damages and civil penalties under the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 et seq.

Section 71-5-182(a)(1) provides liability for any person who—

Presents, or causes to be presented to the state, a claim for payment under the Medicaid program knowing such claim is false or fraudulent;

Makes or uses, or causes to be made or used, a record or statement to get a false or fraudulent claim under the Medicaid program paid for a approved by the state knowing such record or statement is false;

Conspires to defraud the State by getting a claim allowed or paid under the

Medicaid program knowing such claim is false or fraudulent.

310. Defendants violated Tenn. Code Ann. § 71-5-182(a)(1) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Tennessee from at least 1999 to the present by its violation of federal and state laws, as described herein.

311. The State of Tennessee, by and through the Tennessee Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

312. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Tennessee in connection with Defendants' fraudulent and illegal practices.

313. Had the State of Tennessee known that Defendants violated the federal and state

1  laws cited herein, it would not have paid the claims submitted by health care providers and third
2  party payers in connection with Defendants' fraudulent and illegal practices.

3      314.    As a result of Defendants' violations of Tenn. Code Ann. § 71-5-182(a)(1), the
4  State of Tennessee has been damaged in an amount far in excess of millions of dollars exclusive
5  of interest.

6      315.    Relator Phillips is a private person with direct and independent knowledge of the
7  allegations of this Complaint, who have brought this action pursuant to Tenn. Code Ann. § 71-5-
8  183(a)(1) on behalf of himself and the State of Tennessee.

9      316.    This Court is requested to accept supplemental jurisdiction of this related state
10  claim as it is predicated upon the exact same facts as the federal claim, and merely asserts
11  separate damage to the State of Tennessee in the operation of its Medicaid program.

12     WHEREFORE, Relator respectfully requests this Court to award the following damages
13  to the following parties and against Defendants:

14  To the STATE OF TENNESSEE:

15     Three times the amount of actual damages which the State of Tennessee has sustained as a
       result of Defendants' fraudulent and illegal practices;
16
17     A civil penalty of not less than $5,000 and not more than $10,000 for each false claim
       which Defendants caused to be presented to the State of Tennessee;
18     Prejudgment interest; and
19     All costs incurred in bringing this action.

20  To RELATOR:

21     The maximum amount allowed to Tenn. Code Ann. §71-5-183(c) and/or any other
       applicable provision of law;
22
23     Reimbursement for reasonable expenses which Relator incurred in connection with this
       action;
24     An award of reasonable attorneys' fees and costs; and
25     Such further relief as this Court deems equitable and just.

26  / / /
27  / / /
28

-71-

## COUNT TWENTY-FOUR

### VIOLATION OF THE TEXAS FALSE CLAIMS ACT
(AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC, T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC., VALLEY EMERGENCY PHYSICIANS GROUP, INC.)

317.    Relator re-alleges and incorporates each of the allegations of this Complaint as if fully set forth herein.

318.    Additionally, Relator states on information and belief that the course of conduct described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team Health Holdings, LLC, T-System, Inc., Valley Emergency Physicians Medical Group, Inc. and Marina Medical Billing Services, Inc., that these Defendants conduct business in the State of Texas, and that these Defendants' actions described herein occurred in the State of Texas.

V.T.C.A. Hum. Res. Code § 36.002, in relevant part, provides liability for any person who—

(1) knowingly makes or causes to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized;

(2) knowingly conceals or fails to disclose information that permits a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized;

(3) knowingly applies for and receives a benefit or payment on behalf of another person under the Medicaid program and converts any part of the benefit or payment to a use other than for the benefit of the person on whose behalf it was received
*       *       *

(9) knowingly enters into an agreement, combination, or conspiracy to defraud the state by obtaining or aiding another person in obtaining an unauthorized payment or benefit from the Medicaid program or a fiscal agent;
*       *       *

(12) knowingly makes, uses, or causes the making or use of a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to this state under the Medicaid program.

319.    Defendants violated V.T.C.A. Hum. Res. Code § 36.002 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Texas from at least 1999 to the present by its violation of federal and state laws, as described herein.

320.    The State of Texas, by and through the Texas Medicaid program and other state

Complaint for Damages Under the Federal False Claims Act

healthcare programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

321. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Texas in connection with Defendants' fraudulent and illegal practices.

322. Had the State of Texas known that Defendants were violating the federal and state laws cited herein, it wound not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

323. As a result of Defendants' violations of V.T.C.A. Hum. Res. Code § 36.002, the State of Texas has been damaged in an amount far in excess of millions of dollars exclusive of interest.

324. Defendants did not, within 30 days after it first obtained information as to such violations, furnish such information to officials of the State responsible for investigating false claims violations, did not otherwise fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State regarding the claims for reimbursement at issue.

325. Relator Phillips is a private person with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to V.T.C.A. Hum. Res. Code § 36.101 on behalf of himself and the State of Texas.

326. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Texas in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF TEXAS:

Damages at two times the value of any payment or monetary or in-kind benefit provided under the Medicaid program, directly or indirectly, as a result of the unlawful acts set forth above, as provided by the Texas Human Resources Code § 36.052(a)(1) & (4)

Complaint for Damages Under the Federal False Claims Act

Civil penalties of $15,000 for each and every unlawful act set forth above that resulted in injury to a person younger than 18 years of age, as provided by the Texas Human Resources Code § 36.052(3)(A)

Pre- and post-judgment interest, Tex. Hum. Res. Code § 36.052(a)(2),

To RELATOR:

The maximum amount allowed pursuant to V.T.C.A. Hum Res. Code § 36.110(a), and/or any other applicable provision of law;

Reimbursement for reasonable expenses and costs which Relator incurred in connection with this action, Tex Hum Res. Code §§ 36.007 & 36.110(c);;;

Reasonable attorneys' fees which the Relator necessarily incurred in bringing and pressing this case, Tex Hum Res. Code §§ 36.007 & 36.110(c); and

Such further relief as this Court deems equitable and just.

## COUNT TWENTY-FIVE
## VIOLATION OF THE VIRGINIA FRAUD AGAINST TAXPAYERS ACT
## (AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC, T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)

327.    Relator re-alleges and incorporates each of the allegations of this Complaint as if fully set forth herein.

328.    Additionally, Relator states on information and belief that the course of conduct described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., that these Defendants conduct business in the State of Virginia and that these Defendants' actions described herein occurred in the State of Virginia.

329.    This is a qui tam action brought by Relator and the Commonwealth of Virginia to recover treble damages and civil penalties under the Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 et seq.

Va. Code Ann. § 8.01-216.3 provides liability for any person who-

Knowingly presents, or causes to be presented, to an officer or employee of the Commonwealth a false or fraudulent claim for payment or approval;

Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth

Conspires to defraud the Commonwealth by getting a false or fraudulent claim allowed or paid

-74-
Complaint for Damages Under the Federal False Claims Act

1

2    330.  Defendants violated Va. Code Ann. § 8.01-216.3 from at least 1999 to the present
3 by engaging in the fraudulent and illegal practices described herein.

4    331.  Defendants furthermore violated Va. Code Ann. § 8.01-216.3 and knowingly
5 caused thousands of false claims to be made, used and presented to the Commonwealth of
6 Virginia from at least 1999 to the present by its violation of federal and state laws, as described
7 herein.

8    332.  The Commonwealth of Virginia, by and through the Commonwealth of Virginia
9 Medicaid program and other state health care programs, and unaware of Defendants' fraudulent
10 and illegal practices, paid the claims submitted by health care providers and third payers in
11 connection therewith.

12    333.  Compliance with applicable Medicare, Medicaid and the various other federal and
13 state laws cited herein was an implied, and upon information and belief, also an express condition
14 of payment of claims submitted to the Commonwealth of Virginia is connection with Defendants'
15 fraudulent and illegal practices.

16    334.  Had the Commonwealth of Virginia known that Defendants were violating the
17 federal and state laws cited herein, it would not have paid the claims submitted by health care
18 providers and third party payers in connection with Defendants' fraudulent and illegal practices.

19    335.  As a result of Defendants' violations of Va. Code Ann. § 8.01-216.3 the
20 Commonwealth of Virginia has been damaged in an amount far in excess of millions of dollars
21 exclusive of interest.

22    336.  Relator Phillips is a private person with direct and independent knowledge of the
23 allegations of this Complaint, who have brought this action pursuant to Va. Code Ann. § 8.01-
24 216.5(A) on behalf of himself and the Commonwealth of Virginia

25    337.  This Court is requested to accept supplemental jurisdiction of this related state
26 claim as it is predicated upon the exact same facts as the federal claim, and merely asserts
27 separate damage to the Commonwealth of Virginia in the operation of its Medicaid program.

28    WHEREFORE, Relator respectfully requests this Court to award the following damages

-75-
Complaint for Damages Under the Federal False Claims Act

1    to the following parties and against Defendants:

2        To the COMMONWEALTH OF VIRGINIA:

3            Three times the amount of actual damages which the Commonwealth of Virginia has
4            sustained as a result of Defendants' fraudulent and illegal practices;

5            A civil penalty of not less than $5,000 and not more than $10,000 for each false claim
             which Defendants caused to be presented to the Commonwealth of Virginia;

6            Prejudgment interest; and

7            All costs incurred in bringing this action.

8        To RELATOR:

9            The maximum amount allowed pursuant to Va. Code Ann. § 8.01-216.7 and /or any other
             applicable provision of law;
10

11           Reimbursement for reasonable expenses which Relator incurred in connection with this
             action;

12           An award of reasonable attorneys' fees and costs; and

13           Such further relief as this court deems equitable and just.

14                                           **COUNT TWENTY-SIX**
15       **VIOLATION OF THE WISCONSIN FALSE CLAIMS FOR MEDICAL ASSISTANCE**
                                                  **ACT**
16       **(AGAINST DEFENDANTS TEAM HEALTH, INC., TEAM HEALTH HOLDINGS LLC,**
                   **T-SYSTEM, MARINA MEDICAL BILLING SERVICES, INC.)**
17
             338.    Relator re-alleges and incorporates each of the allegations of this Complaint as if
18
     fully set forth herein.
19
             339.    Additionally, Relator states on information and belief that the course of conduct
20
     described in this Complaint was a nationwide practice of Defendants Team Health, Inc., Team
21
     Health Holdings, LLC, T-System, Inc., and Marina Medical Billing Services, Inc., that these
22
     Defendants conduct business in the State of Wisconsin, and that these Defendants' actions
23
     described herein occurred in the State of Wisconsin.
24
             340.    This is a qui tam action brought by Relator and the State of Wisconsin to recover
25
     treble damages and civil penalties under the Wisconsin False Claims for Medical Assistance Act,
26
     W.S.A. 20.931 *et seq.*
27
             W.S.A. 20.931(2) provides liability for any person who-
28

                                                    -76-

Knowingly presents or causes to be presented to any officer, employee, or agent of this state a false claim for medical assistance.

Knowingly makes, uses, or causes to be made or used a false record or statement to obtain approval or payment of a false claim for medical assistance.

Conspires to defraud this state by obtaining allowance or payment of a false claim for medical assistance, or by knowingly making or using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Medical Assistance program.

341.    Defendants violated W.S.A. 20.931(2) and knowingly caused thousands of false claims to be made, used and presented to the State of Wisconsin from at least 1999 to the present by its violation of federal and state laws, as described herein.

342.    The State of Wisconsin, by and through the State of Wisconsin Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

343.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Wisconsin in connection with Defendants' fraudulent and illegal practices.

344.    Had the State of Wisconsin known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

345.    As a result of Defendants' violations of W.S.A. 20.931(2) the State of Wisconsin has been damaged in an amount far in excess of millions of dollars exclusive of interest.

346.    Relator Phillips is a private person with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to W.S.A. 20.931(5) on behalf of himself and the State of Wisconsin.

347.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Wisconsin in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages

to the following parties and against Defendants:

To the STATE OF WISCONSIN:

Three times the amount of actual damages which the State of Wisconsin has sustained as a result of Defendants' fraudulent and illegal practices;

A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of Wisconsin;

Prejudgment interest; and

All costs incurred in bringing this action.

To RELATOR:

The maximum amount allowed pursuant W.S.A. 20.931(11) and /or any other applicable provision of law;

Reimbursement for reasonable expenses which Relator incurred in connection with this action;

An award of reasonable attorneys' fees and costs; and

Such further relief as this court deems equitable and just.

## DEMAND FOR JURY TRIAL

Relator hereby demands a jury trial.

Dated: June 13, 2011                    Respectfully submitted,

By:

**Kershaw Cutter & Ratinoff, LLP**
C. Brooks Cutter
John. R. Parker, Jr.
401 Watt Avenue
Sacramento, CA 95864
Tel. 916-448-9800
Fax. 916-669-4499

-78-
Complaint for Damages Under the Federal False Claims Act